IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TERRY C. BRUNNER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 98-554C |
| | ) | |
| vs. | ) | (The Honorable Judge Wolski) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

PLAINTIFF BRUNNER'S BRIEF OPPOSING DEFENDANT'S MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER

I. INTRODUCTION.

On November 15, 2006, the Defendant, The United States of America, for its Drug Enforcement Agency (DEA) filed herein over the objection of the Plaintiff, its DEFENDANT'S MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER, some 8 ½ years from the filing of Plaintiff's Complaint on July 2, 1998! The Defendant contends that its

> ". . . motion for leave should be granted because plaintiff will suffer no undue prejudice as a result, there has been no undue delay on the part of the defendant in asserting these defenses, and no other reason exists that would justify the Court in departing from the rule that motions for leave to amend pleadings should be granted liberally."

Counsel for the Defendant, in his proposed Defendant's First Amended Answer asserts two (2) new Affirmative Defenses, namely,

> "26. **The Government asserts** the affirmative defense of prior **material breach, in that Mr. Brunner failed to comply with** the terms of **any alleged contract** with the Government.

> 27. The Government asserts the affirmative defense of payment, in that Mr. Brunner received no less than $13,000 pursuant to the **alleged contract** with the Government." [Emphasis Added]

Counsel for the Defendant filed its Motion For Leave To Amend Complaint during a time that he represented to Plaintiff's counsel that his client was interested in reaching a settlement with Plaintiff respecting his damage claims.

II. ARGUMENT

Conspicuously absent from counsel for Defendant's argument in support of Defendant's Motion For Leave To File First Amended Answer is any assertion of facts whatsoever that any alleged "breach" of "any alleged contract with the Government" is "material".

Like counsel's other contentions of "no undue prejudice" to the Plaintiff or "undue delay", it lies by itself as merely a conclusory, unsupported assertion.

In Paragraph 9 of **both** the Defendant's original, as well as proposed Amended Answer, the Government admits that at the very least

> ". . . plaintiff provided assistance and information to the Drug Enforcement Administration (DEA) which resulted in six individuals pleading guilty and one individual being found guilty at trial, and . . . that plaintiff testified. . . before a grand jury; . . ."

This admission, also found in Defendant's Response To Plaintiff's Proposed Findings Of Fact No. 24, was found by this Court to be "undisputed" in its Footnote 19 to its May 2, 2006 Opinion And Order. Furthermore, in the RESPONSES OF THE UNITED STATES TO PLAINTIFF'S REQUEST FOR ADMISSIONS signed and dated October 18, 2001, the Government, in response to Plaintiff's Request For Admission No. 14: Please admit that in the six (6) convictions pursuant to the guilty pleas referred to in Request For Admission No. 13 immediately above, that the DEA seized assets from the Defendants totaling approximately $185,306.86 in real or personal property." states that

> ". . . **defendant admits** that the **DEA seized assets totaling approximately $157,000 relating to the referenced convictions."** [Emphasis Added]

Also, on page 2 of this May 2, 2006 Opinion And Order this Court also found that Plaintiff was not "deactivated" for his alleged "unsatisfactory performance" by Special Agent In Charge, Raymond McKinnon, until January 6, 1993, and that

> "The Plaintiff was paid pursuant to seventeen payment vouchers approved on dates ranging from August 10, 1992[1] through November 23, 1992."

It is important to note at this juncture that the Defendant did not object to, and therefore concurred with Plaintiff Brunner's Proposed Finding Of Fact No. 5 that

> "On August 3, 1992, immediately **following the authorization from the Special Agent In Charge [Raymond McKinnon and Donald Young of the Seattle Regional Office**] for the OCDETF [Organized Crime Drug Enforcement Task Force] Project and the

[1] Actually, the first Payment Voucher was dated August 4, 1992 for $75.00.

> utilization of Terry C. Brunner as an Informant for the Project, Terry C. Brunner met with DEA Special Agents Wes Hearon and Gale Williams and Resident Agent In Charge Ben Yarbrough and other law enforcement officials comprising the Drug Task Force." [Emphasis And Clarification Added]

The Defendant also did not object to, and therefore concurred with Plaintiff Brunner's Proposed Finding Of Fact No. 12 that

> "Raymond J. McKinnon, the Special Agent In Charge of the Seattle, Washington Regional Office of the Drug Enforcement Administration had the authority [who authorized Terry C. Brunner's utilization as an Informant for the OCDETF Project] had the authority to pay or approve rewards or expenses up to $25,000 per informant per quarter, up to $5,000 for informant security expenditures, including expenses of relocation and to pay upward up to $25,000 per informant per quarter under 28 U.S.C. §§24 from The Department of Justice Assets Forfeiture Fund and recommend the payment of any awards in excess thereof."

Thus, notwithstanding any contention of the Government to the contrary, Plaintiff Brunner's undercover investigative efforts were most successful, as further corroborated by the October 28, 1993 Great Falls Tribune Article "Huge Drug Bust Nets 17Arrests In Four States", appended as Defendant's Exhibit 5 to the Deposition of Terry C. Brunner taken herein on June 27, 2000.

Like the DEA's "black balling" of Plaintiff Brunner with North Toole County Law Enforcement following his deactivation [See Deposition of Terry C. Brunner, p.p. 24, 47-48 and 113-114.] the Government's belated attempt now to raise the issue of "material breach" of any "alleged" contract, **which it still denies ever existed**, is nothing more than another reprehensible, bad faith smear tactic[2]. As reflected in the Defendant's Motion For Summary Judgment And Appendix

---

[2]On page 5 of Defendant's Motion For Leave To File First Amended Answer, counsel for the Defendant acknowledges that "The Government consistently asserted that there was no valid contract in existence." and contends that "Indeed, prior to this Court's May 2, 2006 opinion, this Court had never held that DEA Agents possessed the actual implied authority to enter into contracts with confidential informant[s]." However, none of the cases cited by defense counsel

date July 24, 2002, the Government raised these same issues of "unsatisfactory performance" or "material breach" on page 3 thereof even though this Court had previously instructed counsel to confine their summary judgment motions to the issue of whether a contract existed between the parties. In the Government's argument it refers to the fact a small amount of marijuana and a gun were found in Plaintiff's truck. Defendant's Appendix 7-8 referred to by Government, however, indicates that on October 26, 1992 a "warrantless" search was conducted of CI where 1/8 of an ounce of marijuana was found in a jacket lying in the Plaintiff's vehicle and an "unloaded .25 automatic in the glove compartment of the CI's vehicle", the latter of which does not constitute any criminal offense. Notwithstanding the "fruits" of this warrantless search of Plaintiff Brunner's vehicle, the Government continued thereafter to use Plaintiff Brunner as a Confidential Informant and paid him $300.00 on November 10, 1992 for partial monthly salary for CI" for November and $500.00 on November 23, 1992 in reward money from the PI/PE Fund for his efforts in connection with the Michael "Goat" Snider case, RM-92-Z003, with the promise that

> "CI will be paid in full $2,000 at the end/close of this case."[3]

It is readily apparent that RAC Yarbrough did not proceed with the deactivation of Plaintiff

---

for this proposition involved claims for salary or rewards payable from PI/PE Funds, but only claims for awards pursuant to §524(c) 28 U.S.C. from the Asset Forfeiture Fund.

[3]It should be noted that another "**Reward**" of $2,500 was paid to Plaintiff Brunner on October 21, 1992, from the PI/PE Fund by Field Agent, Wes Hearon, with the approval of Ben C. Yarbrough, Resident Agent In Charge.

Brunner until after December 10, 1992 when he received a letter from the undersigned counsel for Plaintiff Brunner in an attempt to collect the money the DEA owed him, as reflected by Ben C. Yarbrough's Report Of Investigation dated December 11, 1992, Defendant's Appx. 7-8. And more than a month after the January 6, 1993 approval of Plaintiff Brunner's "deactivation" by Raymond J. McKinnon, Special Agent In Charge of the Seattle, Washington Regional Office of the DEA, Special Agent McKinnon, in a letter to Plaintiff's counsel dated February 10, 1993, not only reaffirmed that Plaintiff Brunner

> "CI will be paid in full $2,000 at the end/close of this case."

as set forth in the November 23, 1992 Payment Voucher, but also assured Mr. Brunner's counsel that

> "In addition, we will process and submit Mr. Brunner's request for a percentage of the net proceeds realized from the sale of any assets seized in the investigation(s) in which he assisted the Great Falls Resident Office." See Exhibit "D" To Plaintiff's Complaint and Def's Appendix 11.

This reaffirmation by Special Agent In Charge, Raymond J. McKinnon, that Mr. Brunner

> "'will be paid in full $2000 at the end/close of this case' and promise to submit Mr. Brunner's request for a percentage of the net proceeds realized from any assets seized in the investigations in which Plaintiff Brunner assisted."

Some six (6) months later, in a letter dated June 15, 1993, from Robert C. Bonner, DEA Administrator, to U.S. Senator Max Baucus of Montana, Administrator, in referring to McKinnon's letter of February 10, 1993, reiterated Special Agent McKinnon's assurance that the DEA will process and submit Mr. Brunner's request for a percentage of the net assets realized from the sale of any assets seized in the investigations in which he assisted the Great Falls Resident Office. It is undisputed that the Government likewise failed to honor these promises

to Mr. Brunner as well.

The only real material breaches of contract have been committed by the Defendant and have been so adjudicated by this Court in its May 2, 2006 Opinion And Order and the only issues which remain are the dollar amount of Plaintiff's damages, including his attorney's fees under the Equal Access To Justice Act that the Government should be required to pay after stonewalling him for 14 long years!

The Government's contractual breach here is criminal as well, as Paragraph 4 of the August 3, 1992 Cooperating Individual Agreement between Plaintiff Brunner and the DEA Field Agents states that

> ". . . it is a Federal offense to threaten, harass, or mislead anyone [Mr. Brunner included] who provides information about a Federal Crime to a Federal law enforcement agent." [Clarification Added]

Mr. Brunner has been a victim of veiled threats of criminal prosecution by the Defendant and harassed by "black balling" by RAC Yarbrough, and Defendant's 14 years of stonewalling and dilatory tactics, as well as mislead by the Defendant as to the "Monetary Considerations" he was told by RAC Yarbrough and his Field Agents he could expect to receive as a Regular Confidential Informant.

Lastly, the Defendant's inclusion of its other proposed Affirmative Defense of ". . . payment, in that Mr. Brunner has received no less than $13,000 pursuant to the **alleged** contract with the Government.", as set forth in Paragraph 27 of its proposed Amended Answer, is not disputed. In

fact, the 17 Vouchers For Payment actually total $13,654. 95 and this is a fact which counsel concur in the parties' proposed Joint Stipulations Of Fact.[4] "Therefore, an Amended Answer to include this as an Affirmative defense which the Government asserts is also necessary as

"relevant to the quantum of Mr. Brunner's recovery"

is unnecessary and no more warranted than the spurious Affirmative Defense of "prior material breach."

WHEREFORE, the Plaintiff, Terry C. Brunner, respectfully prays this Court for its Order summarily denying Defendant's Motion For Leave To File First Amended Answer as unfounded, prejudicial to the Plaintiff and dilatory.

DATED this 4th day of December, 2006.

Respectfully submitted,

GUSTAFSON & ROHRER

/s/ Gale R. Gustafson

Gale R. Gustafson
400 South Main Street, Suite 101
Conrad, MT 59425
Telephone: (406) 278-7521
Facsimile: (406) 278-7522
Counsel for Plaintiff, Terry C. Brunner

---

[4]This Court, on page 30 of its May 2, 2006 Opinion And Order acknowledges that Defendant "concedes" that [only $3,800 of this sum was paid to Mr. Brunner as salary. The period of his activation. It should be noted, however, that the October 13, 1992 Voucher For Payment reflects that Mr. Brunner was paid $2,000 as "payment **for expenses and salary**" for the month of October. The remaining $9,854.95 was for expenses and rewards paid from the PI/PE Fund..