**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| TERRY C. BRUNNER | ) | |
| Plaintiff, | ) | |
| v. | ) | 98-554C<br>(Judge Wolski) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE**
**TO MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER**

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits the following reply to the response filed by plaintiff, Terry C. Brunner, to our motion for leave to file defendant's First Amended Answer.

Because Mr. Brunner's response fails to successfully rebut the Government's position in favor of amending its complaint, we respectfully request that this Court grant defendant's motion for leave to file its First Amended Answer.

**I. Defendant's Assertions Of Prior Material Breach Is Not Frivolous**

As demonstrated in our initial motion, "leave to amend should be freely permitted absent sufficient explicit reasons indicating that it should be denied." St. Paul Fire and Marine Ins. Co. v. United States, 31 Fed. Cl. 151, 153 (1994), quoting, State of Alaska v. United States, 24 Cl. Ct. 276, 279 (1988). Further, "[i]f the underlying facts or circumstances relied upon by a [party] may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962).

Rather than demonstrating prejudice or the material impact of any alleged undue delay, Mr. Brunner's response focuses upon the merits of the proposed amendment to the complaint. In many respects, such arguments are premature, since the Government merely seeks leave to be able to present the merits of its defense to the Court, and is not yet arguing the merits of such defenses.

Nevertheless, there are limited circumstances in which the merits of a defense would be relevant to the Court's consideration of a motion to amend. Specifically, a motion to amend should be denied on the merits "only if it asserts clearly frivolous claims or defenses." Gamma-10 Plastics, Inc. v. Am. President Lines, 32 F.3d 1244, 1255-54 (8th Cir. 1994), cert. denied, 513 U.S. 1198 (1995) (emphasis added). However, the "likelihood of success on the new claim or defense is not a consideration for denying leave to amend unless the claim is clearly frivolous" "or legally insufficient on its face." Becker v. Univ. of Neb., 191 F.3d 904, 908 (8th Cir. 1999); Sokolski v. Trans Union Corp., 178 F.R.D. 393, 396 (E.D.N.Y. 1998) (citation omitted). "The party opposing such amendment ha[s] the burden of establishing that leave to amend would be futile." Sokolski, 178 F.R.D. at 396 (citations omitted). In response, the moving "party must demonstrate that its pleading states a claim on which relief could be granted, and it must proffer sufficient facts supporting the amended pleading that the claim could survive a dispositive pretrial motion." Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V., 464 F.3d 1339, 1354-55 (Fed. Cir. 2006).

Pursuant to the doctrine of "prior material breach," a party to a contract may defend nonperformance upon the ground that there existed a legal excuse for its nonperformance at the

time of the alleged breach. Coll. Point Boat Corp. v. United States, 267 U.S. 12, 15 (1925). According to the Restatement of Contracts, the doctrine of prior material breach is

> based on the principle that where performances are to be exchanged under an exchange of promises, each party is entitled to the assurance that he will not be called upon to perform his remaining duties . . . if there has already been an uncured material failure of performance by the other party.

RESTATEMENT (SECOND) OF CONTRACTS § 237 cmt. b (1981). See Christopher Village, L.P. v. United States, 360 F.3d 1319, 1334 (Fed. Cir. 2004). In such instances, the failure of performance by one party excuses the non-performance of the other party. Christopher Village, 360 F.3d at 1334.

Sufficient facts support the Government's claim of prior material breach. Mr. Brunner asserts that he is entitled to a full salary for November 1992 and December 1992, as well as moving expenses. In late October 1992, however, Mr. Brunner was found in possession of marijuana and an automatic handgun by Special Agent Wes Hearon while he was working on a case with the DEA. Def. App. 1-5, 17. The cooperating individual agreement, signed by Mr. Brunner, expressly provides that Mr. Brunner "will not violate criminal laws in furtherance of getting information or providing services to DEA." Def. App. 6. Mr. Brunner acknowledged at his deposition that his possession of such marijuana was not legal. Def. App. 20. Further, Mr. Brunner's possession of marijuana threatened to raise questions regarding the validity or the integrity of the evidence of drug activity that he was assisting the DEA gather. While Mr. Brunner asserts that his possession of a gun was legal, he had been instructed on multiple occasions not to bring this weapon with him while he was working with the DEA. Def. App. 1,

17. Accordingly, Mr. Brunner breached his obligations to the DEA at the end of October, and the DEA was no longer contractually[1] obligated to pay Mr. Brunner after that date.

Prior to the October incident, Mr. Brunner had been working on several matters with the Great Falls, Montana DEA office. After the incident, the relationship between Mr. Brunner and the Great Falls, Montana DEA office changed. There is no evidence that Mr. Brunner continued to work in the same capacity with the Great Falls, Montana DEA office. Only two payment vouchers exist for November, and none for December. Of the two payment vouchers for November, one is from agents outside of the Great Falls, Montana office, on the South Lake Tahoe Task Force in Reno, Nevada. Def. App. 7, 9. This voucher was not signed or approved by Ben Yarbrough, the resident agent in charge of the Great Falls, Montana DEA office. Id.

The remaining voucher was approved by Ben Yarbrough, and appears to constitute a new arrangement between the DEA and Mr. Brunner. Def. App. 8. Despite his breach, Mr. Brunner is given $500 for "expenses," and the voucher alludes to the future payment of $2,000. Id. The voucher, however, does not make clear what, if anything, Mr. Brunner is to provide in consideration for such sum. Nevertheless, other evidence in the DEA file indicates that Mr. Brunner was expected to close out his cases by testifying for DEA. Def. App. 10, 12, 14, 15. Indeed, in the Cooperating Individual Agreement, Mr. Brunner had been expressly informed that he "may be called upon to testify in a court of law." Def. App. 6.

[1] Mr. Brunner appears to also objects to the motion to amend based upon the Government's use of the term "alleged contract" in the proposed First Amended Answer. In amending our answer, we are not contesting that this Court has held that there was a contract created between the Government and Mr. Brunner. The answer responds to the compliant, not the Court's opinion, and the term "alleged contract" encompasses any implied contract that the Court has ruled to exist in this case.

Mr. Brunner, however, again breached his agreement with the DEA. Mr. Brunner failed to appear as a witness at a criminal trial, in the process ignoring a Federal subpoena. Def. App. 19. This breach not only impacted the criminal trial for which Mr. Brunner had failed to appear; the United States Attorney was forced to regard Mr. Brunner as an unreliable witness, and thus required to enter into a plea agreement for a lesser charge with the remaining criminal defendant at whose case Mr. Brunner also had agreed to testify.

Mr. Brunner fails to demonstrate that the Government's assertions of prior material breach are frivolous. Accordingly, we respectfully request that we be permitted to amend our answer to assert such a defense.

## II. Plaintiff Raises No Valid Objection To Defendant's Assertion Of Payment

In his response, Mr. Brunner concedes that he was paid $13,654.95. Pl. Resp. 8. See also Def. App. 18. Accordingly, Mr. Brunner asserts that the assertion of the defense of payment is "unnecessary." Id. However, Mr. Brunner makes no legally cognizable argument in opposition to the amendment of our answer to include this defense. Rather, his statement supports the inclusion of this defense. For this reason and the reasons set forth in our initial motion, we respectfully request that we be permitted to amend our answer to assert such a defense.

## CONCLUSION

For the reasons stated above, the Government respectfully requests that the Court grant defendant's motion for leave to file its First Amended Answer.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

/s/ David M. Cohen
DAVID M. COHEN
Director

/s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification United
8th Floor
1100 L Street, NW
Washington, D.C.
Tel: (202) 307-0290

OF COUNSEL:
RICHARD A. MEDEMA
Drug Enforcement Administration
Office of Chief Counsel
700 Army-Navy Drive
Arlington, VA 22202

December 18, 2006

**CERTIFICATE OF FILING**

I hereby certify that on this 18th day of December, 2006, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Steven M. Mager
Steven M. Mager
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice