**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| TERRY C. BRUNNER, | ) | |
| Plaintiff, | ) | |
| v. | ) | 98-554C<br>(Judge Wolski) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S CROSS-MOTION AND RESPONSE TO**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DAMAGES**

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification United
8th Floor
1100 L Street, NW
Washington, D.C.
Tel: (202) 616-2377
Fax: (202) 305-7643
Steven.Mager@usdoj.gov

Attorneys for Defendant

OF COUNSEL:
RICHARD A. MEDEMA
Drug Enforcement Administration
Office of Chief Counsel
700 Army-Navy Drive
Arlington, VA 22202

July 9, 2007

# TABLE OF CONTENTS


ARGUMENT .......... 1

I. Mr. Brunner Incorrectly Calculates Salary Owed By The Government .......... 1

II. Plaintiffs Fail To Demonstrate That He Is Owed A Separate Payment Of $2,000 For Testifying .......... 8

III. Mr. Brunner Offers No Evidence Of His Actual Moving Expense .......... 8

IV. Mr. Brunner Cannot Receive Prejudgment Interest .......... 10

V. Mr. Brunner’s Claim For Attorney’s Fees Is Premature .......... 11

VI. Mr. Brunner’s Request For Reconsideration Regarding The Payment Of An Additional $15,000 Reward For Other Defendant’s Indicted Should Be Denied .......... 11

CONCLUSION .......... 13

## TABLE OF AUTHORITIES

## CASES

PAGE(S)

Ammex, Inc. v. United States,
52 Fed. Cl. 555 (2002) .......... 12

Barron Bancshares, Inc. v. United States,
366 F.3d 1360 (Fed. Cir. 2004) .......... 5

Bighorn Lumber Co., Inc. v. United States,
49 Fed. Cl. 768 (2001) .......... 10

Bishop v. United States,
26 Cl. Ct. 281 (1991) .......... 12

Boers v. United States,
44 Fed. Cl. 725 (1999) .......... 11

Brunner v. United States,
70 Fed. Cl. 623 (2006) .......... 12

Crowley v. United States,
56 Fed. Cl. 291 (2003) .......... 12

Cruz-Pagan v. United States,
35 Fed. Cl. 59 (1996) .......... 13

Doe v. United States,
48 Fed. Cl. 495 (2000) .......... 13

Hadley v. Baxendale,
9 Ex. 341, 156 Eng. Rep. 145 (1854) .......... 10

Hughes Communications Galaxy, Inc. v. United States,
271 F.3d 1060 (Fed. Cir. 2001) .......... 10

Library of Congress v. Shaw,
478 U.S. 310 (1986) .......... 10

M.A. DeAtley Const., Inc. v. United States,
71 Fed. Cl. 370 (2006) .......... 11

Melkonyan v. Sullivan,
501 U.S. 89 (1991) ........................................ 11

Schism v. United States,
316 F.3d 1259 (Fed. Cir. 2002) ........................................ 13

Skip Kirchdorfer, Inc. v. United States,
803 F.2d 711 (Fed. Cir. 1986) ........................................ 11

Toranzo-Clark v. United States,
48 Fed. Cl. 581 (2001) ........................................ 13

**STATUTES**

28 U.S.C. § 2412 ........................................ 11

28 U.S.C. § 2412(d)(1)(B) ........................................ 11

28 U.S.C. § 2412(d)(2)(G) ........................................ 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TERRY C. BRUNNER | ) | |
| Plaintiff, | ) | |
| v. | ) | 98-554C<br>(Judge Wolski) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S CROSS-MOTION AND RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DAMAGES**

On May 2, 2006, the Court ruled that the United States had entered into a contract with the plaintiff, Terry C. Brunner, for the payment of a $2,000 per month salary, plus moving expenses. Defendant, the United States, does not agree with this ruling. Assuming, however, for the sake of this cross-motion and response that there was a contract for the payment of a $2,000 per month salary, plus moving expenses, Mr. Brunner can only arguably establish that he may be entitled to a payment of up to $2,000. Accordingly, pursuant to Rule 56 of the Rules of the United States Court of Federal Claims, we respectfully request that this Court grant defendant's cross-motion for summary judgment on damages and deny plaintiff's motion for summary judgment on damages.

## ARGUMENT

### I. Mr. Brunner Incorrectly Calculates Salary Owed By The Government

At the outset, assuming liability for a $2,000 per month salary, Mr. Brunner incorrectly calculates the amount of salary that would be due by not including several payments made to him, and by requesting payment for periods for which he is not entitled to any salary payments pursuant to the terms of his alleged agreement with the DEA.

Mr. Brunner asserts that he is entitled to $2,000 salary for August 1992. At his deposition, Mr. Brunner, however, testified under oath that the $2,000 per month salary was to be paid in connection with "get[ting] the OCDETF project off the ground, they would pay me by each job once I started infiltrating and making buys." " Def. App. 37-38. Mr. Brunner also testified that "the OCDETF thing . . . . started on 9/1/92." Def. App. 42. Accordingly, Mr. Brunner was entitled to no salary for August 1992, pursuant to his own description of the terms of his agreement with the DEA.

Indeed, this interpretation of the agreement with Mr. Brunner is consistent with the contemporaneous documents. When Mr. Brunner first contacted DEA on December 8, 1992 and December 18, 1992, demanding payment for unpaid salary, he only asserted that he was owed money for November 1992, not August 1992. Def. App. 26-28, 31-33. Unsurprisingly, none of the vouchers for August mention salary payments, although Mr. Brunner received $1,000 for information and expenses, plus $75 for the purchase of evidence and $575 as "funds for security deposit" and "rental of residence and trailer" in August 1992. Def. App. 1-4; Stip. ¶¶ 5-8.

Mr. Brunner's also errs in calculating the amount that he is owed for September 1992. In September 1992, Mr. Brunner was paid $5,999.95 by the DEA, but claims that he was only paid $1,800 in salary, and is owed $200. Mr. Brunner reaches the conclusion that he is owed $200 for September 1992 by assuming that only payments <u>expressly</u> described on the DEA Form 103 as "salary" may be considered salary payments. According to Mr. Brunner's calculations, the payments made on September 1 ($1,000), 14 ($200), and 18 ($600), 1992 were salary, while payments made upon September 8 ($200), 14($124.95), 15 ($375), 29 ($500), and 30 ($3,000), 1992 were not payments for salary. Def. App. 5-12; Stip. ¶¶ 9-16.

However, this claim does not comport with remarks found upon the DEA Form 103 for September 18, 1992, describing the payment of $600 as "balance of monthly ($2,000) salary owed for September 1992." Def. App. 10; Stip. ¶ 14. According to the September 18, 1992 form, there should be another payment voucher for $200 that represents "salary." Indeed, such a voucher does exist, although it does not expressly describe the payment made as "salary." On September 8, 1992, Mr. Brunner received a payment of $200 for "payment to informant for information and expenses on Butte, MT trip." Def. App. 6; Stip. ¶ 10. Accordingly, it is clear that the DEA did not expressly describe all payments that could be part of Mr. Brunner's "salary" as "salary" payments. In many respects, this is unsurprising, since at his deposition Mr. Brunner himself described his $2,000 salary as consisting of 2 distinct components: "a thousand would go towards my family to keep them and a thousand for me to work on the street with." Def. App. 38-39. See also Def. App. 48-49.

Further, the remarks sections on the September DEA 103 forms indicate when money did not go to Mr. Brunner's "salary," but rather were for the payment of a specific expense. The payment of $124.95 on September 14, 1992, for example, is described in the remarks section the relevant DEA form 103 as for "[e]xpenses incurred in the Undercover trailer. (Purchase of equipment . . . [)]." Def. App. 8; Stip ¶ 12. The payment of $375 on September 15, 1992 is described as "expenses" for "Start up U/C Premises." Def. App. 9; Stip. ¶ 13. The $500 received on September 29, 1992 is described as for "expenses for out of state travel," while the payment of $3,000 on September 30, 1992 was for the "Purchase of Evidence." Def. App. 11, 12; Stip. ¶¶ 15, 16.

Specifically, the September payments made to Mr. Brunner may be broken down as follows:

| Date | Amount | Remarks | Classification |
|---|---|---|---|
| **September 1, 1992** | **$1,000** | **"[s]alary ½ of Sept."** | **Salary** |
| **September 8, 1992** | **$200** | **"payment to informant for information and expenses on Butte, MT trip."** | **Salary** |
| **September 14, 1992** | **$200** | **"partial month salary"** | **Salary** |
| September 14, 1992 | $124.95 | "[e]xpenses incurred in the undercover trailer (Purchase of equipment . . . [)]" | Expenses |
| September 15, 1992 | $375 | "Expenses," "Start up U/C Premises" | Expenses |
| **September 18, 1992** | **$600** | **"[p]ayment of balance of monthly ($2,000) salary owed for September 1992"** | **Salary** |
| September 29, 1992 | $500 | "expenses for out of state travel" | Expenses |
| September 30, 1992 | $3,000 | "Purchase of Evidence" | Expenses |

Again, this interpretation is consistent with the contemporaneous documents. When Mr. Brunner first contacted DEA on December 8, 1992 and December 18, 1992, demanding payment for unpaid salary, he only asserted that he was owed money for November 1992, not September 1992.[1] Def. App. 26-28, 31-33.

[1] Further, Mr. Brunner's complaint does not allege that he is entitled to any salary for September 1992.

Mr. Brunner does not claim that he is owed any amount for October 1992.[2] The Government agrees.

November and December, however, present a significant area of disagreement between the parties. In late October 1992, Mr. Brunner was found in possession of marijuana and an automatic handgun by Special Agent Wes Hearon while he was working on a case with the DEA.[3] Def. App. 20-24. The cooperating individual agreement, signed by Mr. Brunner, expressly provided that Mr. Brunner "will not violate criminal laws in furtherance of getting information or providing services to DEA." Def. App. 19; Stip. ¶ 2. Mr. Brunner acknowledged at his deposition that his possession of such marijuana was not legal. Def. App. 45. Further, Mr. Brunner's possession of marijuana threatened to raise questions regarding the validity or the integrity of the evidence of drug activity that he was assisting the DEA gather, especially since the individuals he was investigating were believed to be distributing marijuana, among other illegal substances. See, e.g., Def. App. 50-54. While Mr. Brunner asserts that his possession of a gun was legal, he had been instructed on multiple occasions not to bring this weapon with him while he was working with the DEA. Def. App. 23, 45.

---

[2] Further, Mr. Brunner's complaint does not allege that he is entitled to any salary for October 1992.

[3] On April 5, 2007, this Court denied the Government's motion to amend the answer to assert the defense of prior material breach based upon these facts. A prior material breach will excuse the non-breaching party from further performance. Barron Bancshares, Inc. v. United States, 366 F.3d 1360, 1380 (Fed. Cir.2004). However, the Court's prior opinion(s) do not address the terms under which Mr. Brunner was continue receiving a "salary" from the DEA, and Mr. Brunner's acts (or non-acts) remain relevant in this respect.

Prior to the October incident, Mr. Brunner had been working with the Great Falls, Montana DEA office. After the incident, however, the relationship between Mr. Brunner and the Great Falls, Montana DEA office changed. There is no evidence that Mr. Brunner continued to work in the same capacity with the Great Falls, Montana DEA office. Only two payment vouchers exist for November, and none for December. Of the two payment vouchers for November, one is from agents outside of the Great Falls, Montana office on a different project, for the South Lake Tahoe Task Force in Reno, Nevada. Def. App. 17, 25. This voucher was not signed or approved by Ben Yarbrough, the resident agent in charge of the Great Falls, Montana DEA office. Id.

The remaining voucher was approved by Ben Yarbrough, and appears to constitute a new arrangement between the DEA and Mr. Brunner. Def. App. 18. Despite his actions, and the fact that there is no evidence of Mr. Brunner initiating any more drug buys for the DEA, Mr. Brunner was given $500 for "expenses," and the voucher alludes to the future payment of $2,000. Id. The voucher, however, does not make clear what Mr. Brunner was to provide in consideration for such sum.[4] Nevertheless, other evidence in the DEA file indicates that Mr. Brunner was expected to close out his cases by testifying for DEA. See Def. App. 29 (note by Ben Yarbrough), 30 (memorandum by Donald Young signing for Raymond J. McKinnon), 32 (post it note by Ben Yarbrough), 34 (letter by Donald Young signing for Raymond J. McKinnon). Accordingly, the Cooperating Individual Agreement expressly informed Mr. Brunner that he "may be called upon to testify in a court of law." Def. App. 19.

---

[4] Mr. Brunner has not contended that the voucher forms themselves constitute contracts, but rather that they serve as evidence of a contract.

Mr. Brunner, however, failed to appear as a witness at a criminal trial, in the process ignoring a Federal subpoena. Def. App. 80. Accordingly; the United States Attorney was forced to regard Mr. Brunner as an unreliable witness, and thus required to enter into a plea agreement for a lesser charge with the remaining criminal defendant at whose case Mr. Brunner also had agreed to testify.

At his deposition, Mr. Brunner expressly acknowledged that he was not an agent or employee of the DEA. Def. App. 41. See also Def. App. 19; Stip. ¶ 3. If he were, Mr. Brunner might be arguably entitled to receive a salary until he was formally terminated as an informant. Instead, however, Mr. Brunner testified that he was to be paid "by each job once I started infiltrating and making buys." Def. App. 38. Mr. Brunner was "to bring intelligence, look for drug buys, [and] set up drug buys." Def. App. 40. By November 1992, there is no evidence that Mr. Brunner was working any jobs for the Great Falls, Montana DEA office. (Mr. Brunner did do some work in the early part of the month for the South Lake Tahoe Task Force in Reno, Nevada. There is no evidence of a contract with the South Lake Tahoe Task Force in Reno, Nevada.) Further, there is no evidence that he did anything for the DEA in December 1992. Having not performed any "jobs" for the Great Falls, Montana DEA office in November or December, Mr. Brunner would be entitled to nothing for those months.

Even if this Court were to find that Mr. Brunner's actions with the South Lake Tahoe Task Force in Reno, Nevada were included in the scope of his arrangement with the Great Falls, Montana resident agent in charge, Mr. Brunner only worked with the agency for a portion of November, and would not be entitled to the full salary for the month of November 1992, and would be entitled to nothing for December. Indeed, in a December 18, 1992 follow-up letter,

Mr. Brunner acknowledges as much, and suggests that he should received a pro-rated salary of $866.67 for November 1992, and makes no claim for December 1992.[5] Def. App. 32.

## II. Plaintiffs Fail To Demonstrate That He Is Owed A Separate Payment Of $2,000 For Testifying

As noted above, in mid-November, Mr. Brunner was offered a deal by the resident agent in charge. Mr. Brunner was to receive $2,000 in order to close out his cases by testifying for DEA.[6] Def. App. 18, 29, 30, 32, 34. Mr. Brunner alleges that he testified at a grand jury hearing for one of the targets of the DEA's investigation, but has acknowledged that he decided to not appear at another trial. Def. App. 43-44.

Mr. Brunner did not meet his end of the bargain, and accordingly Mr. Brunner is entitled to none of the $2,000 he was to receive. Because Mr. Brunner, for whatever reasons, took it upon himself to not testify, he should not receive the $2,000 he was to receive for such testimony.

## III. Mr. Brunner Offers No Evidence Of His Actual Moving Expense

Mr. Brunner claims that he is entitled to "no less than $2,501.24 for Relocation Expenses." Pl. Mot. 7. However, Mr. Brunner does not, and has never, produced any evidence of moving expenses. Because Mr. Brunner cannot demonstrate any moving expenses for which

---

[5] Further, Mr. Brunner's complaint does not allege that he is entitled to any salary for December 1992.

[6] The Government contends that the resident agent in charge possessed no authority to enter into such an arrangement with Mr. Brunner. Nevertheless, it appears that this argument would be foreclosed by the Court's prior opinion, and the $2,000 arrangement appears to have been ratified at higher levels than the resident agent in charge.

the Government would be liable, the Court should deny his request for summary judgment as to such expenses.

The Government acknowledges that, prior to December 8, 1992, Mr. Brunner estimated that he would incur moving expenses in the amount of $2,501.24, by moving from Conrad, Montana to Ashland, Wisconsin. Stip. ¶¶ 22, 23. However, such figures were just an estimate, and Mr. Brunner has never produced for the Government any accounting of his actual moving expenses.

Indeed, it is unclear whether Mr. Brunner moved his family to Ashland, Wisconsin. In his deposition, Mr. Brunner testified that he moved to central Wisconsin, not Ashland, Wisconsin, in March 1993. Def. App. 46-47. (Ashland, Wisconsin is in northern Wisconsin.) In December 1993, Mr. Brunner asserts that he moved to Fort Erie, Ontario, Canada. Id. In his motion, Mr. Brunner omits this interim step, only asserting that he "eventually" moved to Fort Erie, Ontario.[7] Pl. Mot. 5. Mr. Brunner has produced no estimates or record of expenses for any of his actual moves.

Finally, it is significant that both of these alleged relocations, to Wisconsin and to Fort Erie, Ontario, occurred approximately 2 to 3 months and a little less than one year, respectively, after the Government had deactivated Mr. Brunner as a confidential informant for unsatisfactory performance. Mr. Brunner has not produced any evidence that his alleged contractual right to moving expenses was intended to survive his deactivation for his unsatisfactory performance.

[7] While Mr. Brunner asserts that the Government may be responsible for "double" his estimated expenses, because he later moved to Fort Erie, Ontario, he has never produced any evidence that the Government contracted with him to pay his expenses for multiple relocations over a one year period. Pl. Mot. 5. In any event, his demand appears to be limited to the $2,501.24 estimate. Pl. Mot. 7.

Nor has Mr. Brunner produced any evidence that the alleged contract contemplated multiple relocations after deactivation at the Government's expense. It is well-established that a party injured by a contract breach may be awarded damages resulting from the breach only if such damages were foreseeable at the time of contracting. Hadley v. Baxendale, 9 Ex. 341, 156 Eng. Rep. 145 (1854); see also Hughes Communications Galaxy, Inc. v. United States, 271 F.3d 1060, 1066 (Fed. Cir. 2001); Bighorn Lumber Co., Inc. v. United States, 49 Fed. Cl. 768, 773 (2001). Damages are foreseeable at the time of contracting only if they were the natural and proximate result of the breach. Hughes Communications, 271 F.3d at 1066. Even assuming that the Government could foresee the need for Mr. Brunner to relocate, there is no evidence that the Government was in any position to predict that Mr. Brunner would be required to relocate more than once for what appears to be job-related reasons.

## IV. Mr. Brunner Cannot Receive Prejudgment Interest

In his motion, Mr. Brunner alleges that he is entitled to prejudgment interest "in excess of $15,000" based upon "Montana's legal rate of interest" of 10 percent per annum. Pl. Mot. 6. It is well settled, however, that, absent an express waiver of sovereign immunity for pre-judgment interest, a plaintiff is not entitled to such damages in a contract case. Library of Congress v. Shaw, 478 U.S. 310, 311, 315-17 (1986) (barring award equivalent to pre-judgment interest absent an express waiver of sovereign immunity by contract or statute, even where such award would be necessary to make the plaintiff whole, because interest is not considered part of traditional contract damages). Mr. Brunner has produced no evidence of a statutory waiver by the United States to pay pre-judgment interest in this case, and accordingly, we respectfully request that Mr. Brunner's claim for pre-judgment interest be denied.

## V. Mr. Brunner's Claim For Attorney's Fees Is Premature

In his motion, Mr. Brunner presents a claim for an unspecified amount of attorney's fees. Pl. Mot. 6. Setting aside that the fact that Mr. Brunner has not produced for the Court any evidence of the actual fees incurred, Mr. Brunner's request for fees is premature.

Pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"), a party seeking an award of fees and other expenses may "within thirty days of final judgment in the action, submit to the court an application . . . which shows that the party is a prevailing party . . . ." 28 U.S.C. § 2412(d)(1)(B) (2004) (emphasis added). The EAJA statute, in turn, expressly defines a "final judgment" as "a judgment that is final and not appealable." 28 U.S.C. § 2412(d)(2)(G); Melkonyan v. Sullivan, 501 U.S. 89, 95 (1991). In the present case, judgment has not yet been entered. Moreover, such judgment is not final until after the 60 day period for appeal has lapsed, with neither party entering an appeal.

Accordingly, because Mr. Brunner's vague request for fees is extremely premature, we respectfully request that the Court dismiss this claim without prejudice. Skip Kirchdorfer, Inc. v. United States, 803 F.2d 711, 712 (Fed. Cir. 1986) (dismissing without prejudice a premature EAJA application in order to avoid "piecemeal consideration of fee awards"); M.A. DeAtley Const., Inc. v. United States, 71 Fed. Cl. 370, 372 n.1 (2006) (dismissing without prejudice a premature EAJA application); Boers v. United States, 44 Fed. Cl. 725, 732 (1999) (same).

## VI. Mr. Brunner's Request For Reconsideration Regarding The Payment Of An Additional $15,000 Reward For Other Defendant's Indicted Should Be Denied

Without actually moving for reconsideration, plaintiff effectively seeks to have the Court reconsider its prior decision that the Government did not enter into a contract with Mr. Brunner

to receive "awards," allegedly based upon the Government's stipulation that Mr. Brunner received a reward in connection with the seizure of 1.5 pounds of methamphetamines and cocaine from Michael Snider on October 21, 1992. Specifically, on May 2, 2006, this Court held that the resident agent in charge of the Great Falls, Montana DEA office lacked the authority to enter into a contract to pay Mr. Brunner an award of $2,500 per defendant indicted. Brunner v. United States, 70 Fed. Cl. 623, 644 (2006). Despite this ruling, Mr. Brunner asserts that the Government owes him damages in the amount of "$15,000 for 'rewards' for the six (6) other Defendants indicted as a result of Plaintiff's investigative efforts and Grand Jury Testimony." Pl. Mot. 7.

In order to prevail upon a motion for reconsideration, the movant must show that: (a) an intervening change in the controlling law has occurred; (b) evidence not previously available has become available; or (c) that the motion is necessary to prevent manifest injustice. See Bishop v. United States, 26 Cl. Ct. 281, 286 (1991). "A court, therefore, will not grant a motion for reconsideration if the movant 'merely reasserts . . . arguments previously made . . . all of which were carefully considered by the Court.'" Crowley v. United States, 56 Fed. Cl. 291, 294 (2003) (quoting Ammex, Inc. v. United States, 52 Fed. Cl. 555, 557 (2002)).

Plaintiff has not demonstrated that there has been an intervening change in the law. Further, the information in question is not new, and was before the Court on the parties prior motion for summary judgment. Plaintiff has presented no actual justification for attempting to re-argue its liability claims at this point in the proceedings. Mr. Brunner was aware that he had received a reward for the seizure of 1.5 pounds of methamphetamines and cocaine from Michael Snider on October 21, 1992, and the Government's stipulation adds nothing new to the record

that is not found in the vouchers. Plaintiff has offered no valid justification for reopening this issue over one year after the Court's opinion.

In any event, the payment of a discretionary "reward" and the existence of a contract to pay an "award" are two very different things. It is well settled that such "[g]ratuities involve no agreement of parties; and the grant of them creates no vested right." Schism v. United States, 316 F.3d 1259, 1305 (Fed. Cir. 2002) (internal quotations and citations omitted). Simply because the Government made a discretionary reward does not mean that the Government contracted to provide such rewards, or that the resident agent in charge possessed the actual or implied authority to enter into a contract to make such reward. This Court's previous ruling with regard to the authority to offer a contract for an reward was well supported by the case law. See Toranzo-Clark v. United States, 48 Fed. Cl. 581, 583 (2001); Doe v. United States, 48 Fed. Cl. 495, 501-04 (2000), Cruz-Pagan v. United States, 35 Fed. Cl. 59, 61-62 (1996).

## CONCLUSION

For the reasons stated above, the Government respectfully requests that the Court grant defendant's cross-motion for summary judgment on damages, and deny plaintiffs motion for summary judgment on damages.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ Jeanne E. Davidson by Bryant G. Snee
JEANNE E. DAVIDSON
Director

/s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification United
8th Floor
1100 L Street, NW
Washington, D.C.
Tel: (202) 616-2377
Fax: (202) 305-7643
Steven.Mager@usdoj.gov

OF COUNSEL:
RICHARD A. MEDEMA
Drug Enforcement Administration
Office of Chief Counsel
700 Army-Navy Drive
Arlington, VA 22202

July 9, 2007

**CERTIFICATE OF FILING**

I hereby certify that on this 9th day of July 2007, a copy of the foregoing "DEFENDANT'S CROSS-MOTION AND RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DAMAGES," with attached appendix, was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Steven M. Mager
Steven M. Mager
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice