IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RONALD W. STEVENS, Personal Representative for the Estate of TERRY C. BRUNNER, Deceased | * | No. 98-554C (Judge Wolski) |
| Plaintiff, | * | |
| v. | * | PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT -OPPOSING DEFENDANT'S CROSS-MOTION |
| THE UNITED STATES, | * | |
| Defendant. | * | |

## I. INTRODUCTION:

The Plaintiff, RONALD W. STEVENS, the duly appointed Personal Representative for the Estate of TERRY C. BRUNNER, Deceased, submits this Reply Brief in further support of PLAINTIFF BRUNNER'S MOTION FOR SUMMARY JUDGMENT - BRIEF IN SUPPORT THEREOF filed herein on June 8, 2007 and incorporated herein by this reference as though specifically set forth herein, and opposing DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DAMAGES filed herein on July 9, 2007.

## II. PLAINTIFF'S CALCULATION OF SALARY IS CORRECT

Counsel for the Defendant opens up Defendant's Cross-Motion For Summary Judgment by first asserting that the Defendant, the United States, does not agree with this Court's May 2, 2006 ruling that the DEA had entered into a contract with the Plaintiff, Terry C. Brunner, now deceased, for the payment of a $2,000 per month salary, plus moving expenses[1], but assuming

[1]On page 32 of this Court's May 2, 2006 Opinion And Order this Court concluded as a matter of law that

"... the existence of **a binding contract** with the DEA, **promising Plaintiff**

arguendo that there was such a contract that Plaintiff Brunner, now deceased, is only entitled to one (1) month's salary of $2,000.00 for the five (5) months from and after his activation as a Regular Confidential Informant on August 3, 1992 for "monetary considerations" (See Joint Stipulation Of Fact No. 1) until his deactivation on January 6, 1993 (See Defendant's Answer, ¶ 9; Defendant's Response to Plaintiff's Proposed Findings No. 24; Def.'s App, at 10). These pleadings and/or judicial admissions of the Defendant certainly override, and supersede any pre-lawsuit statements of undersigned counsel during his initial correspondence with Ben Yarbrough, Resident Agent In Charge, who, of course, responded by categorically denying any assertions and claims of Plaintiff Brunner for compensation, relocation expenses and retaliating against Mr. Brunner by immediately proceeding with Mr. Brunner's deactivation and later "blackballing him" to Northern Toole County Law Enforcement where he had sought similar employment as a confidential or undercover informant.

Although defense counsel asserts that Plaintiff Brunner testified under oath that he was not to receive the $2,000 per month salary until the OCDETF project was off the ground, citing to deposition testimony given on direct examination by the then U.S. Attorney, Mark Josephs, Mr. Brunner clarified his testimony in this regard during cross-examination by undersigned counsel. Mr. Brunner testified that this August 3, 1992 was the **second** meeting with the DEA and that it was at this meeting that he signed the Cooperating Individual Agreement with the DEA **immediately** after his salary and other compensation had been agreed upon by RAC Ben

---

> **(Brunner) a monthly salary of $2,000 and reimbursement of relocation expenses, has been established as beyond dispute.**" [Clarification and Emphasis Added]

Yarbrough who had already obtained the approval of the Special Agent In Charge, Raymond J. McKinnon or his designee, Donald Young, to set up the OCDETF case and the utilization of Plaintiff Brunner as a Regular Informant motivated by "Monetary Consideration" at a meeting preliminary to this one. Def. App. 37. In fact, Plaintiff Brunner testified as follows on cross-examination:

> "Q: Now, you said that after this project was set up you mentioned that you were involved, you involvement was 24/7. Would you explain what you meant by that?
>
> A: Twenty-four hours a day, seven days a week.
>
> Q: And this would have commenced right after your signature of this agreement on August 3?
>
> A: Pretty much so.
>
> Q: You were involved in setting up the trailer home and the necessary surveillance equipment?
>
> A: Yes."

Plaintiff Brunner also went on to testify that he also had started his infiltration of the Cossack's Motorcycle Club by working at Custom Motorcycle And Cars, where he was sponsored by Michael "Goat" Snyder. See Pls. App. 1. attached hereto consisting of pages 117-130 of Deposition Testimony of Terry C. Brunner. Also, it is significant to note that neither Mr. Brunner nor his undersigned counsel had the benefit of Mr. Brunner's Establishment Report, DEA Form 202, **legible** copies of all the Vouchers For Payment for the period of his activation from August 3, 1992 to his deactivation on January 6, 1993 until after his undersigned counsel

made his initial demands upon RAC Ben Yarbrough on behalf of Mr. Brunner, filed the Complaint herein and obtained copies of these documents pursuant to discovery requests for production.

Again, this argument of defense counsel likewise flies in the face of this Court's Conclusions in its May 2, 2006 Opinion And Order recited verbatim in footnote 1 above and on page 2 of Plaintiff's Motion For Summary Judgment - Brief In Support Thereof.

Defense counsel's assertion that Plaintiff Brunner was paid **all** of his $2,000.00 salary for September, when applicable Vouchers for September 1992 clearly establish he only received $1,800 for September is similarly distorted, as is his argument that Plaintiff Brunner was not entitled to his salary for November and December, the remaining months of his activation prior to his deactivation on January 6, 1993. As to Mr. Brunner's assertion that he was not paid for all of his October 1992 salary the Court's attention is again directed to the 10/13/92 Voucher For Payment which reflects that the $2000 paid Mr. Brunner was "for expenses and October salary." See Joint Stipulation No. 17 of the Defendant's Response To Plaintiff's Proposed Finding. And, when asked in Interrogatory No. 48 "What portion of the $2,000 paid to Plaintiff, Terry C. Brunner, for October's salary and expenses pursuant to the 10/13/92 Voucher For Payment was for expenses," Mr. Richard A. Medema, the attorney for the Drug Enforcement Administration who replied under oath thereto, stated "Defendant objects to this interrogatory as irrelevant and unlikely to lead to the discovery of admissible evidence." See Answer to Interrogatory No. 48 of Response of the United States to Plaintiff's Second Set Of Interrogatories. See Pl's App. 2,

attached hereto, including pages 1, 2, 48 and faxed page 36 (Richard A. Medema'a Certificate). In a most incongruous fashion, counsel for Defendant argues that monies paid Mr. Brunner for "expenses" should be considered payment of salary, contending that "it is clear that the DEA did not expressly describe all payments that **could be** part of Mr. Brunner's "salary" as "salary payments." Understandably, this statement originates from the same arrogant and morally bereft agency that accused Mr. Brunner of misappropriating unto himself the $3,000 given to him by Special Agent Wes Hearon on September 30, 1992 for the "Purchase of Evidence" and given to Michael "Goat" Snider that same date to purchase methamphetamine (crack) and cocaine, which, in turn, he turned over to the Great Falls DEA officer on October 13, 1992 and received a "$2,500 reward" for on October 21, 1992. See Defendant's Appendix No. 26 & 27 and Joint Stipulations Of Fact Regarding Damages, No. 19.

Unfortunately, in this same argument respecting the $2,000.00 salary agreed upon by the Defendant for the period of Plaintiff's activation as a Regular Confidential informant and remaining unpaid some 14 ½ years later defense counsel resorts to smearing the Plaintiff's character and job performance by alluding to a small amount of marijuana found in a jacket in his vehicle and a handgun found in the glove box thereof pursuant to a warrantless search in October 1992. The Defendant never prosecuted or requested prosecution of Mr. Brunner for misdemeanor possession of marijuana and has never acknowledged that having a handgun in your vehicle is not a crime in Montana. See §45-8-316. Carrying concealed weapon., M.C.A. (upon his person) and §45-8-321. Permit to carry concealed weapon., M.C.A.

Since these irrelevant, scandalous allegations have no bearing on the issue of Mr. Brunner's claims for damages, it is apparent defense counsel's resort to the same is designated to disparage his character and unduly prejudice this Court against him. This is the "cheapest of shots" directed to a Regular Confidential Informant who not only was implemental in the indictment and arrest of no less than seven (7) Defendant's published as one of the biggest drug busts in a four (4) state area following his Grand Jury Testimony on January 20, 1993, but also enriched the Defendant's coffers by no less than some $185,305.86 from assets confiscated and forfeited from six (6) of the (7) Defendants who were indicted and plead guilty as a result of Plaintiff Brunner's investigative efforts. See Defendant's Response To Plaintiff's Proposed Findings, specifically Fact No. 24, Exhibit "B" to Plaintiff's Complaint and Defendant's response to Request For Admission No. 14 of RESPONSES OF THE UNITED STATES TO PLAINTIFF'S REQUEST FOR ADMISSION attached hereto as Pls. App. 3. But, this conduct of defense counsel is just one of many "dirty tricks" of his client, the Drug Enforcement Administration, which include:

1.) Completion of Mr. Brunner's Personal History or Establishment Report, DEA Form 202, which identifies him as a "Regular" Confidential Informant motivated by "Monetary Considerations" but failure to complete "as fully as possible," including the details of the "compensation agreed upon" as required by Section 6612.27. Informant Establishment Report.

2.) Destroying or concealing the tape recording taken of Mr. Brunner's August 3, 1992 discussion with RAC Ben C. Yarbrough, Field Agents Wes Hearon and Gale Williams and other Drug Task Force Members when they discussed what compensation the DEA promised him, i.e., the $2,000 monthly salary, $2,500 reward per defendant indicted due

to his investigative efforts, an award of 25% of any assets seized and forfeited by any such Defendants and his relocation expenses. See Defs App., p.p. 38-43, Deposition of Terry C. Brunner.

3.) Reneging on its Agents' promise to provide Plaintiff Brunner and his family witness protection after receiving an death threat, including relocation expenses to Ashland, Wisconsin, where he had a job secured starting January 4, 1992 but lost it because of the DEA/s failure to pay his necessary expenses to relocate. See Defs. App. 7 & 8, December 11, 1992 Report of Investigation.

4.) Requesting his Deactivation as a Regular Confidential Informant for "unsatisfactory performance" immediately following receipt of the December 8, 1992 letter of undersigned counsel to RAC Ben Yarbrough requesting confirmation of the DEA'S payment for his housing and utilities and payment of the compensation believed due him to date. See Def's App. 7 & 8, Report of Investigation of Ben C. Yarbrough, RAC, prepared on December 11, 1992, seeking Mr. Brunner's deactivation for unsatisfactory performance.

5.) Ben Yarbrough, RAC, blackballing Mr. Brunner following his deactivation on January 6, 2008 when he tried to obtain similar employment with the North Toole County Sheriff's Department headquartered in Shelby, Montana. See Defs. App 23, p. 48 of Deposition of Terry C. Brunner.

6.) DEA Chief Counsel, Dennis Hoffman, accusing Mr. Brunner of stealing or misappropriating unto himself the $3,000 that was given him to purchase drugs. See Defs. App. 26-28, Letter of Dennis Hoffman addressed to the undersigned counsel for Plaintiff

dated July 21, 1995.

7.) The failure of the DEA'S Office of Professional Responsibility to pursue any investigative action as promised Plaintiff's undersigned counsel in a letter dated April 15, 1995 from Michael E. Shaheen, Jr., Counsel for said Office of Professional Responsibility, following a letter of complaint from undersigned counsel to the U.S. Attorney General, Janet Reno.

8.) The broken promise to pay the remaining $2,000.00 reward "in full" to Mr. Brunner for the indictment of Michael "Goat" Snyder, RM-92-2003 "at the end/close of **this** case." See (Pl's App. F-36) and Def. App. 11.

9.) The broken promise of Raymond J. McKinnon Special Agent In Charge of the Seattle, Washington DEA Regional Office set forth in his letter of February 10, 1993, more than a month after his January 6, 1993 deactivation of Mr. Brunner for "unsatisfactory performance" that his office will process and submit Mr. Brunner's request for a percentage (25%) of the net proceeds realized from the sale of any assets seized in the investigation in which Mr. Brunner assisted the Great Falls Resident Office. See Defs. App. 11; Pls. App. F-36.

10.) The broken promise of Robert C. Bonner, Administrator of the Drug Enforcement Administration, set forth in his letter of June 15, 1993 to U.S. Senator Max Baucus of Montana, more than six (6) months **after** Mr. Brunner's deactivation by SAC Raymond J. McKinnon, reiterating the assurance of SAC Raymond J. Kinnon that his agency will process and submit Mr. Brunner's request for a percentage (25%) of the net proceeds realized from the sale of any assets seized in the investigations in which Mr. Brunner

> assisted the Great Falls Resident Office.

Ironically, paragraph 4 of the August 3, 1992 Cooperating Individual Agreement signed by Terry C. Brunner and RAC Ben Yarbrough and Field Agent Wes Hearon states in pertinent part

> "... **that it is a Federal offense to** threaten, harass or **mislead anyone who provides information about a Federal Crime to a Federal Law Enforcement Agency**." [Emphasis Added] See Exhibit "A" to Plaintiff's Complaint and Joint Stipulations Of Fact Regarding Damages, No. 4.

"Anyone" as used in this Agreement, certainly includes Mr. Brunner, who, as a Regular Confidential Informant, contracted with the Drug Enforcement Administration to provide information about federal drug trafficking crimes to the Drug Enforcement Administration, a Federal Law Enforcement Agency. And, it is readily apparent that Mr. Brunner has been subjected by this very Agency with whom he contracted to assist as a Confidential Informant to threats of criminal prosecution for possession of marijuana and stealing or misappropriating unto himself $3,000 given to him to purchase evidence, harassed when trying to secure other employment following his deactivation by being "blackballed" by RAC Ben C. Yarbrough, who previously refused to pay Mr. Brunner's relocation expenses causing him lose a job he had secured in Ashland, Wisconsin, and, lastly, grievously **mislead** him about the compensation and protection he was to receive as a Regular Confidential Informant motivated solely by "Monetary Considerations."

Very simply, Mr. Brunner was entitled to receive his promised salary of $2,000.00 dollars for everyone one of the five (5) months of his activation, i.e., from August 3, 1992 through January 6, 1993, and, arguably, even for the month of January 1993 since he was requested by the Drug Enforcement Administration to testify before the Grand Jury in Billings, Montana on January 20, 1993, which he most willing and satisfactorily did, not withstanding the fact that the Drug Enforcement Administration already deactivated him for "unsatisfactory performance," reneged on its promise of witness protection, including relocation, causing him to lose the job he had secured in Ashland, Wisconsin, and "blackballed" him when sought other similar employment with the Toole County Sheriff's Department.[2]

In summary, the Plaintiff is entitled to damages in the amount of no less than $6,200.00 for salary owed.

## III. PLAINTIFF IS ENTITLED TO HIS ESTIMATE OF RELOCATION OF EXPENSES

Counsel for the Defendant continues to chisel away at Plaintiff's damage claim by asserting that he should not be awarded anything for his relocation expenses, that Mr. Brunner has not, and cannot now (since he has deceased) demonstrate that he actually expended such sum, that any such expenses he would have incurred after his deactivation for "unsatisfactory performance" on

---

[2]Defendant's counsel's argument that one (1) of two (2) Vouchers For Payments to Plaintiff Brunner in November 1992 was signed by agents outside of the Great Falls, Montana office, and was therefore a "different project" and therefore not entitling him to payment for November's salary is ludicrous. As indicated in the Defendant's Response To Plaintiff Brunner's Proposed Findings, particularly its Response To Finding Nos. 4 & 5, the OCDETF Project for which Plaintiff Brunner was utilized involved a multi-state drug trafficking investigation.

January 6, 1993, would not be reimbursable and that such expenses or damages were not "foreseeable" at the time of contracting."

Counsel for Defendant, however, has again conveniently forgotten that this Court held in its Conclusion of its May 2, 2006 Opinion And Order that

> ". . . **the existence of a binding contract with the DEA, promising plaintiff** a monthly salary of $2,000 **and reimbursement of relocation expenses has been established as beyond dispute.**" [Emphasis Added]

Counsel for the Defendant likewise has conveniently forgotten that the **singular** purpose of preparing and agreeing to the Joint Stipulation Of Facts Regarding Damages submitted to this Court was for the purpose of reaching a joint agreement as to certain damage elements of Plaintiff's claims to facilitate this Court's determination thereof in a summary judgment proceeding on Plaintiff's damages. Thus, unless the relocation cost estimates set forth in Paragraphs 22 and 23 totaling $2,501.24 were to govern this Court's consideration of such damages, it would be a meaningless act to include such estimates in the parties' Joint Stipulation Of Facts Regarding Damages. Lastly, defense counsel's argument that witness protection, including relocation, is not "foreseeable" for a Regular Confidential Informant is as absurd as his contentions that monies paid by Defendant to Plaintiff Brunner for his "expenses" should be considered "salary."

In Summary, Plaintiff is entitled to relocation expenses of no less that $2,501.24.

**IV. PLAINTIFF BRUNNER IS ALSO ENTITLED TO PAYMENT OF $2,000 BALANCE OF $2,500 REWARD FOR MICHAEL "GOAT" SNIDER.**

According to the November 23, 1992 Voucher For Payment For Information And Purchase Of Evidence, Plaintiff's Exhibit A17, Plaintiff Brunner was paid or advanced $500.00 on said date towards the $2,500 reward promised him at the outset of his employment with DEA by the signators of said Payment Voucher, namely Ben C. Yarbrough, Resident Agent In charge of the Great Falls, Montana DEA Office, and Special Agents, Gale D. Williams and Wes Hearon. Although this November 23, 1992 Payment for Information And Purchase Of Evidence for this $500.00 payment advanced to Plaintiff Informant, Terry Brunner, is "checked" as "Payment To Informant For Information And Expenses" and the Remarks Section of Paragraph 8 thereof erroneously states it is for "expenses" also, said payment, in actuality, is a "reward." Unlike the other payments for "expenses" represented by the other Vouchers For Payment For Information And Purchase Of Evidence dated August 4, 1992 for $75.00 (Plaintiff's Exhibit A-2), August 27, 1992 for $575.00 (Plaintiff's Exhibit A-4), September 8, 1992 for $200 (Plaintiff's Exhibit A-6), September 14, 1992 for $124.95 (Plaintiff's Exhibit A-8), September 15, 1992 for $375.00 (Plaintiff's Exhibit A-9), September 29, 1992 for $500.00 (Plaintiff's Exhibit A-11) and October 14, 1992 for $780.00 (Plaintiff's Exhibit A-14), the "expenses" were typically identified as expenses for the purchase of illegal drugs, travel, and for rental, security deposit and the utilities for Plaintiff's trailer or electronic surveillance equipment, were payment "in full" for said

expenses, with no additional sum or balance due "at the end/close" of any particular case. These Vouchers For Payment are found on pages 17-36 of Plaintiff's Appendix to Plaintiff Brunner's Cross-Motion For Summary Judgment- Brief In Support Thereof And Opposing Defendant's Motion For Summary Judgment dated September 20, 2002 and incorporated herein by this reference as though specifically set forth herein. See also Joint Stipulations Of Fact Regarding Damages Nos. 5, 8, 10, 12, 13, 15 and 18.

In fact, it is readily evident form the October 21, 1992 Voucher For Payment For Information And Purchase Of Evidence that "Rewards" were also paid to Plaintiff Informant Brunner from PE/PI Funds. In fact, "For Reward" is checked at the top of this Voucher indicating that the $2,500 paid to Plaintiff Informant Brunner on October 21, 1992 was for the payment of a "reward" for his most successful seizure of 1.5 pounds of methamphetamines and cocaine. See Plaintiff's Exhibit A-15 and Joint Stipulations Of Fact Regarding Damages No. 19. Plaintiff Informant Brunner was also similarly paid "rewards" in connection with other earlier drug seizures unrelated to the OCDETF case as reflected in the August 10, 1992 Voucher For Payment for $500.00 (Plaintiff's Exhibit A-1) and the August 21, 1992 Voucher For Payment for $500.00 (Plaintiff's Exhibit A-3) from PE/PI Funds. See also Joint Stipulation Of Fact Nos. 6 and 7.

Thus, it is manifestly clear that Ben C. Yarbrough, the Resident Agent In Charge and signator on the August 10, October 21, November 23, 1992 Vouchers For Payment, did have the authority to pay, and did, in fact, pay rewards to Plaintiff Brunner from PE/PI Funds in amounts up to $2,500 per drug seizure, as well as Defendant indicted and convicted. See DEFENDANT'S RESPONSE

TO PLAINTIFF'S PROPOSED FINDING NO. 16 where the Defendant judicially admits that the November 23, 1992 Voucher For Payment for $500.00 paid to Plaintiff Informant Brunner was for a "reward", just like the $2,500 reward paid to him pursuant to the October 21, 1992 Voucher For Payment.

This being the case, Defendant clearly owes Plaintiff the additional $2,000.00 balance of the $2,500 reward promised "to be paid in full. . . at the end/close of **this** case." in the November 23, 1992 Voucher For Payment. This promise to pay Plaintiff Brunner the remaining $2,000 reward was made **after** the DEA allegedly found during a warrantless search of Plaintiff's personal vehicle a small amount of marijuana in a jacket in Plaintiff Brunner's vehicle and a handgun in the glove compartment thereof in October 1992 which defense counsel now asserts represents "unsatisfactory performance" warranting his client's reneging on all promises to Plaintiff Brunner.

Again, defense counsel attempts to pervert the clear meaning of the language in the November 23, 1992 Voucher For Payment which refers to file or case No. RM-92-Z003 in Paragraph 5(a) thereof and the language in the Remarks Section of Paragraph 8 thereof, to wit"

> "Payment to CI for expenses[3] incurred in RM-92-Z003 [Michael Snider] CI will be paid in full $2,000 at the end/close of **this** case." [Emphasis And Clarification Added]

---

[3]As already discussed above, Defendant has judicially admitted that this Voucher is actually for a reward in DEFENDANT'S RESPONSE TO PLAINTIFF'S PROPOSED FINDINGS, particularly Proposed Finding No. 16.

More specifically, on page 8 of Defendant's Cross-Motion And Response To Plaintiff's Motion For Summary Judgment, defense counsel perverts the clear meaning of the phrase

> "CI will be paid in full $2,000 at the end/close of **this** case." [Emphasis Added]

by asserting that

> "Mr. Brunner was to receive $2,000 in order to close out his case**s** by testifying for DEA." [Emphasis Added]

Thus, defense counsel has converted the **singular** file or case, RM-92-Z003, "Michael Snider" to plural or all cases.

It is undisputed that Plaintiff Informant Brunner's investigation efforts in the OCDETF Project, including his January 20, 1993 Grand Jury Testimony, resulted in the indictment of no less than seven (7) defendants for drug trafficking offenses, including Michael "Goat" Snider, and that six (6) of these Defendants plead guilty including Michael "Goat" Snider who plead guilty on January 27, 1995, See Paragraph 9 of Defendant's ANSWER and DEFENDANT'S RESPONSES TO PLAINTIFF'S PROPOSED FINDINGS, particularly Defendant's Response to Proposed Finding OF Fact No. 24.

Thus, there is no question that Plaintiff Informant Brunner performed on his part by testifying before the Grand Jury on January 20, 1993 regarding his investigative efforts in the OCDETF Project, which resulted in the indictment of no less than seven (7) Defendants for drug trafficking

offenses, including Michael "Goat" Snider whose **case** "ended/closed" when he plead guilty on January 27, 1995. It should not go unnoted that when Plaintiff Informant Brunner testified on behalf of and for the benefit of the Defendant before the Grand Jury on January 20, 1993 he had already be "deactivated" for alleged "unsatisfactory performance," denied witness protection, including relocation expenses, and "blackballed" by RAC Ben C. Yarbrough.

Likewise, there is no question that Plaintiff Informant Brunner, or his estate now, is entitled to the payment of the $2,000 balance due him for his $2,500 reward promised him by RAC Ben C. Yarbrough, for the indictment of Michael "Goat" Snider, RM-92-Z003, who plead guilty without the requirement of trial testimony by Plaintiff Brunner.

As this Court stated on page 24 of its May 2, 2006 Opinion And Order

> "Indeed, it would have been difficult for defendant to deny that Mr. Yarbrough had the authority to approve payments of salary and expenses to Mr. Brunner, as the record contains numerous vouchers, signed by Mr. Yarbrough as the 'approving supervisor' which authorized such payments . . . The Court concludes that the RAC's power to spend the DEA's money implicitly includes the power to contract for the same purposes. . . . When a government agent has the authority to pay in advance, using the government's money for a particular service or item, contracting for that service or item would also be the appropriate means' Floyd, 74 U.S. (7 Wall.) at 680, of exercising this power. Cf Henke v. United States, 43 Fed. Cl.

> 15, 26 (1999) (noting that payments like these, coming from the Purchase Of Evidence/Purchase of Information accounts of the DEA, 'can be obligated in advance.')"

As indicated above, the record herein also contains numerous vouchers for the payment of "rewards" to Plaintiff Informant Brunner from PE/PI funds signed by Mr. Yarbrough as the approving supervisor. Thus, it is patently clear that RAC Yarbrough had the authority to and did in fact spend monies from the PE/PI Fund for the payment of rewards or advances on rewards, as well as contract to pay future rewards therefrom to Plaintiff Informant Brunner.

Accordingly, the Defendant is also liable to Plaintiff for the payment of the remaining $2,000.00 owed to him for his reward for the indictment and conviction of Michael "Goat" Snider as the result of his investigative efforts and Grand Jury Testimony. The restrictions concerning payments of "awards" from the Department of Justice Assets Foundation ("AFF") simply do not apply here since these "rewards" payments came from, or

> "could come from the Purchase Of Evidence/Purchase of Information (PE/PI) accounts of the DEA [and] are not restricted by Section 524(c) [of Title 28 U.S.C.]" [Clarification Added] See p. 26 of this Court's May 2, 2006 Opinion And Order.

**V. PLAINTIFF IS ALSO ENTITLED TO PAYMENT OF $2,500 REWARDS FOR REMAINING SIX (6) DEFENDANTS INDICTED AND CONVICTED AS A RESULT OF HIS INVESTIGATIVE EFFORTS AND GRAND JURY TESTIMONY**

Based upon the discussion in Paragraph IV above respecting the authority of RAC Ben C. Yarbrough to pay “rewards” or to “contract to pay rewards” from PE/PI Funds to Plaintiff Informant Terry C. Brunner, Plaintiff should likewise be entitled to receive the $2,500 rewards promised him by RAC Ben C. Yarbrough for each of the remaining six (6) Defendants indicted and convicted as a result of his investigative efforts and Grand Jury Testimony, for an additional sum of $15,000.00.

**VI. CONCLUSION**

In view of the protracted litigation and “dirty tricks” that the Defendant has subjected the Plaintiff to for the fifteen years preceding his death a year ago, and the apparent inability for his estate to collect prejudgment interest from this most obdurate Defendant, the undersigned counsel respectfully prays this Court to reconsider the evidence herein, including the Joint Stipulation Of Fact Regarding Damages, specifically Fact No. 4 about “misleading” Plaintiff Brunner and Defendant’s Response To Plaintiff Brunner’s Proposed Findings, specifically Findings Of Fact Nos. 4, 5, 22 and 23. The “authorization” from the Special Agent In Charge of the Seattle Regional Office (Raymond J. McKinnon) for the OCDETF Project and **utilization** of Terry C. Brunner as an Informant for the Project surely implies that SAC McKinnon was fully apprised of the “Monetary Considerations” to which the DEA agreed to in authorizing his utilization in this OCDETF Project when he was activated on August 3, 1992 until his deactivation by SAC McKinnon on January 6, 1993. Likewise, SAC McKinnon’s post-deactivation letter to undersigned counsel for Plaintiff dated February 10, 1995 (PL. App. F-36) ratifying the reward arrangement with Plaintiff Brunner and promising to “process and submit Mr. Brunner’s request

for a percentage (25%) of the net proceeds realized from the sale of any assets seized in the investigation in which he assisted the Great Falls Resident Office," which promise was reiterated by Robert C. Bonner, DEA Administrator, in his letter of June 15, 1993 to U.S. Senator Max Baucus of Montana, should be deemed a ratification of such awards from the Asset Forfeiture Fund, and, at the very least, the DEA should be compelled by Order of this Court to fulfill its promise to "process and submit" such requests of Plaintiff Brunner.

WHEREFORE, the Plaintiff, TERRY C. BRUNNER, respectfully prays this Court for Summary Judgment in his favor and against the Defendant for the following amounts:

1. No less than $6,200.00 for salary owed;
2. No less than $2,501.24 for Relocation Expenses;
3. $2,000 for Plaintiff's reward remaining unpaid with respect to Michael "Goat" Snider, RM-92-Z003;
4. $15,000 for "rewards" for the six (6) other Defendants indicted as a result of Plaintiff's investigative efforts and Grand Jury Testimony; and for
5. Such other and further relief as the Plaintiff may be entitled to under any applicable law or statute.

DATED this 10th day of June, 2008

Respectfully submitted,

GUSTAFSON & ROHRER

/s/ Gale R. Gustafson

Gale R. Gustafson
400 South Main Street, Suite 101
Conrad, Montana 59425
Telephone: (406) 278-7521
Facsimile: (406) 278-7522
Counsel for Plaintiff, Ronald W. Stevens,
Personal Representative of the Estate of
TERRY C. BRUNNER, Deceased.

CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of June, 2008, a copy of PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT -OPPOSING DEFENDANT'S CROSS-MOTION was sent via electronic notification to:

Steven Mager
Trial Attorney
Commercial Litigation Branch, Civil Division
United States Department of Justice
Washington, D.C. 20530
Attorney for Defendant

/s/ Gale R. Gustafson
Gale R. Gustafson