**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| RONALD W. STEVENS<br>as Personal Representative of<br>the Estate of Terry C. Brunner, | ) | |
| Plaintiff, | ) | |
| v. | ) | 98-554C<br>(Judge Wolski) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO**
**DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ON DAMAGES**

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification United
8th Floor
1100 L Street, NW
Washington, D.C.
Tel: (202) 616-2377
Fax: (202) 305-7643
Steven.Mager@usdoj.gov

OF COUNSEL:
RICHARD A. MEDEMA
Drug Enforcement Administration
Office of Chief Counsel
700 Army-Navy Drive
Arlington, VA 22202

July 14, 2008

Attorneys for Defendant

**TABLE OF CONTENTS**


ARGUMENT. ..... 1

I. The Government Has Not Made A "Judicial Admission". ..... 1

II. Mr. Brunner Incorrectly Calculates Salary Owed By The Government. ..... 2

III. Plaintiff's Reply Fails To Demonstrate That He Is Entitled To A Separate Payment Of $2,000 For Testifying. ..... 8

IV. Plaintiff's Reply Offers No Evidence Of His Actual Moving Expenses. ..... 10

V. Mr. Brunner's Request For Reconsideration Regarding The Payment Of An Additional $15,000 Reward For Other Defendant's Indicted Should Be Denied. ..... 11

CONCLUSION. ..... 12

# TABLE OF AUTHORITIES

## CASES

**PAGE(S)**

Boyajian v. United States,
191 Ct. Cl. 423 F.2d 1231 (1970). .................................................. 10

First Federal Lincoln Bank v. United States,
518 F.3d 1308 (Fed. Cir. 2008)................................................ 10-11

International Paper Co. v. United States,
39 Fed. Cl. 478 (1997). .................................................. 1

Schism v. United States,
316 F.3d 1259 (Fed. Cir. 2002).................................................. 8

Stelco Holding Co. v. United States,
44 Fed. Cl. 703 (1999). .................................................. 1

Winn-Senter Constr. Co. v. United States,
110 Ct. Cl. 75 F. Supp. 255 (1948).................................................. 5

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| RONALD W. STEVENS<br>as Personal Representative of<br>the Estate of Terry C. Brunner, | ) | |
| Plaintiff, | ) | |
| v. | ) | 98-554C<br>(Judge Wolski) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ON DAMAGES**

In our cross-motion for summary judgment on damages, we demonstrated that plaintiff could not prove entitlement to the damages sought. Plaintiff's response fails to rebut our conclusions. Accordingly, for the reasons set forth herein and in our cross-motion, we respectfully request that the Court grant our cross-motion for summary judgment on damages.

## ARGUMENT

### I. The Government Has Not Made A "Judicial Admission"

As an initial matter, plaintiff asserts that the Government made "judicial admissions" in our cross-motion that Mr. Brunner was entitled to at least $2,000 for salary. Pl. Resp. 2. Plaintiff is incorrect.

A judicial admission is a "formal act, done in the course of judicial proceeding, which waives or dispenses with the production of evidence, by conceding for purposes of litigation that the proposition of fact alleged by the opponent is true." International Paper Co. v. United States, 39 Fed. Cl. 478, 482 (1997). Judicial admissions must be "deliberate, clear and unequivocal." Stelco Holding Co. v. United States, 44 Fed. Cl. 703, 710 (1999) (citations omitted).

Our cross-motion does not contain the "deliberate, clear and unequivocal" statements that plaintiff alleges. In our cross-motion, we respectfully provided that we did "not agree" with the Court's ruling,[1] but nevertheless would analyze damages within the context of the Court's decision. Def. Mot. 1. We further provided that "Mr. Brunner can only arguably establish that he may be entitled to a payment of up to $2,000." Def. Mot. 1. This does not constitute a judicial admission, and is not an "unequivocal" statement that plaintiff is entitled to $2,000. Instead, we provided that Mr. Brunner has presented a reasonable argument that he is entitled to $2,000 for his post-October involvement with DEA and his testimony, although we further demonstrate in our cross-motion that Mr. Brunner failed to fulfill the conditions upon which such payment was premised, as set forth in our motion and appendix. Def. Mot. 8.

Accordingly, plaintiff is incorrect that the Government has admitted that Mr. Brunner is and was entitled to $2,000.

## II. Mr. Brunner Incorrectly Calculates Salary Owed By The Government

Plaintiff first argues that he is entitled to a salary for all of August ($2,000), claiming that Mr. Brunner testified that the OCDETF project began the date that Mr. Brunner signed the cooperating individual agreement: August 3, 1992. This argument, however, is directly contrary to Mr. Brunner's express sworn statement that "the OCDETF thing . . . . started on 9/1/92." Def. App. 42.

Indeed, the testimony cited by the plaintiff in support of his argument that he was entitled to payment beginning on August 3, 2008 does not directly contradict Mr. Brunner's testimony

---

[1] Such a general statement does not constitute a request for reconsideration, but merely preserves any right the Government may have to appeal the Court's decision on liability, in the event that Solicitor General determines that an appeal would be appropriate.

that "the OCDETF thing . . . . started on 9/1/92." Specifically, plaintiff argues that Mr. Brunner testified that:

> Q: Now, you said that after this project was set up you mentioned that you were involved, your involvement was 24/7. Would you explain what you meant by that?
> A: Twenty-four hours a day, seven days a week.
> Q: And this would have commenced right after your signature of this agreement on August 3?
> A: Pretty much so.

Pl. App. 1 at 128. Mr. Brunner's vague agreement ("[p]retty much so") that he was working for the DEA "24/7" after signing the statement does not demonstrate that the OCDETF project commenced on August 3, 2008. Indeed, September 1, 1992 is after August 3, 1992, and Mr. Brunner's testimony does not clarify how soon he was working on the OCDETF project. Mr. Brunner never disavowed his prior testimony, and never provided that his right to payment began earlier than September 1, 1992.

As noted in our cross-motion, Mr. Brunner's testimony that he was only entitled to the payment of a "salary" beginning in September 1992 is consistent with the contemporaneous documents, including Mr. Brunner's December 1992 letters setting forth his claim. See Def. App. 26-28, 31-33. While plaintiff attempts to argue that Mr. Brunner did not possess copies of the DEA vouchers in December 1992, this does not change that Mr. Brunner's most contemporaneous view of his claim was that he was only owed a salary for November 1992, not August or September 1992. Id. Indeed, plaintiffs have contended that the alleged contract between Mr. Brunner and DEA was oral, and have not argued that the vouchers themselves serve as the contract. Accordingly, Mr. Brunner's December 1992 recitation of his claim is the most immediate and best evidence of his view of his purported contract with DEA. It was only over

five years later that Mr. Brunner would argue in his complaint to this Court that he was entitled to a salary for August 1992,[2] and even later that he would argue that he should be paid for part of September and December 1992.

Finally, plaintiff's allegations and a review of the DEA reports support Mr. Brunner's statement that "the OCDETF thing . . . . started on 9/1/92." In their proposed findings, plaintiff provided that the alleged promise to pay Mr. Brunner a salary in connection with OCDETF took place after Mr. Brunner assisted with a drug purchase from Michael O'Keefe. Def. Supp. App. 13-14 ("Terry Brunner serving on a trial basis as an informant.") The vouchers and DEA reports, however, place this purchase at the middle/end of August 1992. Def. Supp. App. 1-2 (Report for Michael O'Keefe, G-DEP identifier IA2-CO). Def. App. 2-3 (payments for IA2-CO). Further, there are no reports referencing the RM-92-Z003 investigation until September 1992. See Def. Supp. App. 3-7. Accordingly, Mr. Brunner was entitled to no salary for August 1992.

Plaintiff also fails to demonstrate that he is owed a salary for September 1992. Plaintiff argues that the Government's evaluation of the September 1992 payments is a "distortion," but makes no attempt to reconcile the vouchers upon which he relies to make his argument. Significantly, plaintiff never explains why the voucher for September 18, 1992, describing the payment of $600 as "balance of monthly ($2,000) salary owed for September 1992," should be ignored, but that the Court should treat the payment of $200 on September 8, 1992 as for something other than salary based upon the lack of the word "salary." Based upon the vouchers and the contemporaneous documents, we have demonstrated that Mr. Brunner was paid in full

[2] At the time of the filing of the complaint, Mr. Brunner had sufficient information to assert a claim for September and December 1992, if he believed that he was entitled to such sums. See Compl. Ex. C.

for September 1992, and fully explained the descriptions in the comments section. Mr. Brunner has not done the same.

Plaintiff's problematic approach continues for October 1992,[3] for which the plaintiff has asserted damages, but does not even attempt to quantify such damages. It is well-established that the party claiming contract damages must at least make some attempt to estimate its damages. See Winn-Senter Constr. Co. v. United States, 110 Ct. Cl. 34, 75 F. Supp. 255, 259 (1948) ("These being suits for breach of contract, the plaintiffs had the burden not only of proving that there were breaches, but that they were harmed by the breaches, and the extent of the harm, within measurable limits.") (emphasis added). Plaintiff does not do so.

Further, while plaintiff is correct in detailing the text of the voucher, Mr. Brunner never previously asserted, and plaintiff never even alleged in his complaint, that he was entitled to any damages for October. Indeed, as demonstrated in our cross-motion, Mr. Brunner's "salary" consisted of two parts: 2 distinct components: "a thousand would go towards my family to keep them and a thousand for me to work on the street with." Def. App. 38-39. In fact, at his deposition, Mr. Brunner expressly stated that this was the case with regard to the October 1992 payments. Def. App. 48-49. Accordingly, the text of the October voucher "for expenses and October salary," Def. App. 13, is expressly consistent with the Mr. Brunner's two component description of his "salary" as being half money for his family and half "to work on the street with." As demonstrated in our initial cross-motion, to the extent Mr. Brunner received a

[3] In our initial cross-motion, we stated that Mr. Brunner did not seek damages for October 1992, based upon the amount of damages sought in Mr. Brunner's initial motion and the complaint. Mr. Brunner's response makes clear that he is seeking unspecified damages for October 1992.

payment for a specific expense beyond this working capital (such as for rental of a facility that the DEA had agreed to pay directly or purchase of a significant quantity of evidence), this was set forth in detail in the voucher. Accordingly, Mr. Brunner is entitled to no damages for October 1992.

Finally, with regard to a salary for November and December 1992, plaintiff's own allegations regarding the scope of his duties rebut these claims. As noted in our initial cross-motion, Mr. Brunner expressly acknowledged that he was not an agent or employee of the DEA. Def. App. 41. See also Def. App. 19; Stip. ¶ 3. Rather, Mr. Brunner testified that he was to be paid "by each job once I started infiltrating and making buys." Def. App. 38. Mr. Brunner was "to bring intelligence, look for drug buys, [and] set up drug buys." Def. App. 40. Mr. Brunner, however, did no jobs for the Great Fall, Montana DEA office during November and December 1992.

Indeed, as Mr. Brunner has delimited his responsibilities to the RM-92-Z003 investigation, he would not be entitled to a salary for his conduct outside of the scope of that investigation. While Mr. Brunner attempts to assert that he entered into a contract for a multi-state investigation, this Court only held that Mr. Brunner's contract was based upon the implied authority of the Great Falls, Montana resident agent in charge and his ability to dispense his own funds. Contrary to Mr. Brunner's repeated allegations, the Court did not find that Mr. Brunner's purported contract was authorized at a higher level, and plaintiff does not explain how beginning a completely separate investigation with the South Lake Tahoe Task Force in Reno, Nevada would require payment from the Great Falls, Montana DEA office, or how the resident agent in charge of one DEA office may obligate the funds for another, different resident agent in charge in

a different DEA office for a separate investigation. See Def. Supp. App. 8 (listing a different file number, G-DEP identifier, file title, and resident agent in charge for the South Lake Tahoe Task Force investigation).

Finally, plaintiff's reply also details a number of matters wholly irrelevant to damages, in an effort to establish that the DEA is a "arrogant and morally bereft agency." See Pl. Resp. 5, 6-9. These statements are irrelevant to the question of damages, and many of these unfounded claims have already been rejected by this Court. For example, this Court has already rejected plaintiff's allegation that there was a tape recording of the meeting between Mr. Brunner and the DEA. Brunner v. United States, Order (Apr. 2, 2001). In other instances, plaintiff's allegations misconstrue the facts. For example, plaintiff repeatedly asserts that the DEA accused Mr. Brunner of misappropriating $3,000 that was given to him to purchase illegal drugs as evidence, implying that such a concern was raised in bad faith. Pl. Resp. 5, 7-8. This concern, however, was raised by DEA in a response to a letter from Gale Gustafson that appeared to assert that this $3,000 was a part of plaintiff's compensation. Def. Supp. App. 9-10. ("Although your computation of the compensation received by Mr. Brunner includes this $3,000, that money was given to Mr. Brunner to purchase illegal drugs as evidence. However, it appears from your last correspondence that Mr. Brunner kept this $3,000 instead of using it for its intended purpose.") (emphasis added). In any event, because such accusations are irrelevant to the issues before the Court, we respectfully decline to comment further on such matters.

## III. Plaintiff's Reply Fails To Demonstrate That He Is Entitled To A Separate Payment Of $2,000 For Testifying

Plaintiffs' response brief directly undermines his argument that he may be entitled to $2,000 compensation for closing out his cases by testifying for DEA. Plaintiff argues that the $2,000 noted in the documentation represents a "reward," not a payment for "information and expenses." Pl. Resp. 12-13 ("said payment, in actuality, is a reward"). Plaintiff then goes on to argue that he possesses the right to such a reward. If, however, this sum merely represents a possible "reward," rather than a contractual obligated payment, DEA would be under no obligation to pay the $2,000, irrespective of whether Mr. Brunner testified or not. Schism v. United States, 316 F.3d 1259, 1305 (Fed. Cir. 2002).

Setting aside such legal concerns, plaintiff argues that the code "RM-92-Z003" only was concerned with the Michael "Goat" Snider investigation, and that Mr. Brunner only needed to testify against Mr. Snider to meet his obligations to the DEA and receive $2,000. Specifically, plaintiff argues that because the November 23, 2008 voucher discussing a possible $2,000 payment was captioned with the code RM-92-Z003, that the voucher provided that he would be provided $2,000 "at the end/close of this case" and that upon testifying at the grand jury hearing he had met his obligations with regard to RM-92-Z003 and was entitled to $2,000. Pl. Resp. 15. Plaintiff is incorrect.

As an initial matter, Mr. Brunner does not deny that he had an obligation to testify in order to receive this $2,000 payment. Plaintiff's characterization of the purportedly limited scope of Mr. Brunner's responsibility, however, is flatly contradicted by the documents. The RM-92-Z003 investigation involved multiple possible defendants, including Gary "Tiny"

Roberson. See, e.g., Def. App. 52-53; Def. Supp. App. 1-5. In a memorandum terminating Mr. Brunner as an informant, the DEA provided that "CI may have compromised case number RM-92-Z003 by giving his attorney a list of possible defendants that DEA had targeted in the above mentioned case." Def. App. 24 (emphasis added).[4] Reviewing the letter in question, this "list of possible defendants" includes Gary "Tiny" Roberson. Def. App. 27. Mr. Roberson was clearly a target of the RM-92-Z003 investigation. Def. Supp App. 3-7. Mr. Brunner, however, admits that he did not testify against Mr. Roberson, despite notice that his testimony was required. Def. App. 44. Accordingly, because Mr. Brunner did not meet his alleged contractual responsibilities, he is not entitled to $2,000 for his testimony.

In the alternative, plaintiff argues that he met his responsibilities because the Government has admitted that Mr. Brunner provided the DEA with "assistance," and has acknowledged that Mr. Brunner testified at a Grand Jury hearing. Pl. Resp. 15 (citing Defendant's Response To Plaintiff's Proposed Findings). See Def. Supp. App. 15-16.[5] The mere admission that Mr Brunner provided the DEA with assistance, however, does not mean that Mr. Brunner met his

---

[4] Plaintiff attempts to accuse DEA of wrongdoing by implying that Mr. Brunner was terminated solely for consulting with an attorney. While this contention is rebutted by the termination memorandum itself, it also bears noting that discussing the terms of his alleged contract with DEA was not the problem at issue. Def. App. 23. Compromising an investigation by providing a list of the names of possible defendants that the DEA was targeting, however, was a concern. See Def. Supp. App. 12 ("the person will not compromise DEA . . . activities").

Similarly, the legality of Mr. Brunner's ownership of a n automatic handgun was not at issue. Def. Mot. 5. Instead, it was Mr. Brunner's failure to accept the direction of the special agents and leave his gun at home as requested. Def. App. 23, 45. See Def. Supp. App. 12 ("[t]he person will accept the measure of direction necessary to effectively utilize his services").

[5] Plaintiff cites to the Defendant's Response To Plaintiff's Proposed Findings in support of this argument, but fails to attach a copy of this document to his response. For ease of reference, we have appended a copy to this reply. Def. Supp. App. 15-16.

full responsibility to testify, as set forth in our cross-motion. The Government has not denied Mr. Brunner's role as an informant or that he provided grand jury testimony. Mr. Brunner received compensation from the DEA for his services while acting as an informant. Even after Mr. Brunner had compromised his value as an informant by bringing a gun and drugs with him on an investigation, the DEA was willing to provide him with $2,000 to close out his cases. Mr. Brunner, however, has acknowledged that he failed to fully comply with his obligation. Accordingly, Mr. Brunner is not entitled to the $2,000 referenced in November 23, 2008 voucher.

## IV. Plaintiff's Reply Offers No Evidence Of His Actual Moving Expenses

In our initial cross-motion, the Government demonstrated that plaintiff failed to offer any evidence of his purported moving expenses. In lieu of providing such evidence, plaintiff provided the Court with an estimate of the expenses of relocating to a destination to which Mr. Brunner did not actually move. Because plaintiff's response still fails to offer any actual proof of expenses, we respectfully request that the Court grant the Government's cross-motion for summary judgment on damages with respect to moving expenses.

In plaintiff's response to our cross-motion, plaintiff merely asserts that this Court's ruling on liability held that the Government is contractually liable for moving expenses. Plaintiff has correctly read the Court's opinion. Plaintiff, however, still cannot recover without some actual proof of his quantum of damages. A plaintiff that cannot prove its damages cannot recover, even if the plaintiff successful demonstrates liability. Boyajian v. United States, 191 Ct. Cl. 233, 240, 423 F.2d 1231, 1235 (1970). See also First Federal Lincoln Bank v. United States, 518 F.3d 1308, 1319-20 (Fed. Cir. 2008) ("A claim for an attenuated loss resulting from a breach, like a

lost profits claim, must not be speculative and must be supported by evidence providing a reasonable basis for the amount of damages."). Providing an estimate for moving to a location that plaintiff did not move to, without more, cannot demonstrate the actual costs for moving to a entirely separate location.

Plaintiff attempts to argue that the joint stipulations filed by the parties relieve him of his burden to prove damages for moving expenses. However, as plaintiff is well aware, these stipulations only provide that "[p]rior to December 8, 1992, Mr. Brunner received an estimate of $1,801.24 from Atlas Van Lines for the expense of moving from Conrad, Montana to Ashland, Wisconsin." Stip. ¶ 22. No where do the stipulations provide that this estimate represents actual damages, because no evidence of actual damages has been presented by plaintiff. No where do the stipulations provide that Mr. Brunner moved from Conrad, Montana to Ashland, Wisconsin, because this is incorrect. Def. App. 46-47. No where do the stipulations provide that this inapplicable estimate is recoverable by plaintiff as damages, because it is not. Accordingly, because plaintiff cannot demonstrate his moving expenses, he cannot recover such costs, and we respectfully request that the Court grant the Government's cross-motion for summary judgment.

**V. Mr. Brunner's Request For Reconsideration Regarding The Payment Of An Additional $15,000 Reward For Other Defendant's Indicted Should Be Denied**

As noted in our cross-motion, the Court has already ruled, consistent with precedent, that Mr. Brunner is not entitled to a reward for these additional defendants. Plaintiff's response offers no new arguments, and we respectfully request that the Court grant the Government's cross-motion for summary judgment.

## CONCLUSION

For the reasons stated above, the Government respectfully requests that the Court grant defendant's cross-motion for summary judgment on damages, and deny plaintiffs motion for summary judgment on damages.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification United
8th Floor
1100 L Street, NW
Washington, D.C.
Tel: (202) 616-2377
Fax: (202) 305-7643
Steven.Mager@usdoj.gov

OF COUNSEL:
RICHARD A. MEDEMA
Drug Enforcement Administration
Office of Chief Counsel
700 Army-Navy Drive
Arlington, VA 22202

July 14, 2008

**CERTIFICATE OF FILING**

I hereby certify that on this 14th day of July 2008, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ON DAMAGES," with attached appendix, was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Steven M. Mager
Steven M. Mager
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice