# DEFENDANT'S SUPPLEMENTAL APPENDIX

# INDEX TO DEFENDANT'S SUPPLEMENTAL APPENDIX

| DOCUMENT | PAGE(S) |
|---|---|
| Various DEA Reports of Investigation (DEA 6) involving Terry C. Brunner (August 1992-November 1992) | 1-8 |
| Letter from Dennis F. Hoffman, Chief Counsel, DEA to Gale R. Gustafson, (July 21, 1995) | 9-11 |
| Excerpt from DEA Agent's Manual. | 12 |
| Excerpts from Defendant's Response To Plaintiff's Proposed Findings | 13-16 |

# REPORT OF INVESTIGATION



| | | | |
|---|---|---|---|
| 1. PROGRAM CODE | 2. CROSS FILE / RELATED FILES: SRM-92-0014 | 3. FILE NO. GFRM-92-4045 | 4. G-DEP IDENTIFIER IA2-C0 |
| 5. BY: S/A Wes Hearon AT: Great Falls RO | | 6. FILE TITLE O'KEEFE, Michael | |
| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | | 8. DATE PREPARED 8/10/92 | |

9. OTHER OFFICERS: RAC Ben C. Yarbrough, S/A Gale Williams, Montana State Highway Patrol Officers Mike Kent (Badge #250), Terry Aubrey (Badge #152), and Kent Hickethier (Badge #168

10. REPORT RE: Traffic stop of O'KEEFE on 8/7/92.

DETAILS:

1. On 8/5/92, S/A Hearon received the following information from SRM-92-0014 in reference to Michael Shawn O'KEEFE.

2. The CI stated that he/she received information from O'Keefe's sister in Conrad, MT. O'Keefe's sister advised that O'KEEFE had left Seattle on or about 8/5/92 in route to Conrad, MT, and that when O'KEEFE arrived the CI would be able to purchase 1/8 ounce of cocaine from O'Keefe's sister.

3. S/A Hearon and RAC Yarbrough drove to Plains, MT, after receiving information from Sanders County Sheriff's Deputy Chris McGuigan concerning O'KEEFE'S arrest there two weeks prior and that O'KEEFE had relatives in Plains, MT. Based on this information and information that the CI had received from O'Keefe's sister it was hypothesized that O'KEEFE might be spending the night in Plains, MT, while in route to Conrad, MT. Upon arriving in Plains, MT, S/A Hearon and RAC Yarbrough set up surveillance. At approximately 6:00 a.m. on 8/6/92, S/A Hearon and RAC Yarbrough broke off surveillance and returned to Great Falls, MT.

4. On 8/7/92, S/A Hearon again received information from the CI that O'KEEFE was in Plains, MT, with relatives and that he would be leaving on the 7th in route to Conrad, MT. At this point S/A Hearon and RAC Yarbrough with the assistance of the Civil Air Patrol flew to Missoula, MT and drove S/A Hearon's OGV from Missoula, MT to Plains, MT.

5. Upon arriving in Plains, MT, on 8/7/92, the Agents met with S/A Williams who advised that surveillance had lost O'KEEFE, who was driving a 1991 black Chevrolet S-10 pickup with Montana plate number 2T-5293A. RAC Yarbrough and S/A Hearon left Plains, MT, and subsequently located the 1991 Chevy pickup driving on Highway 200 approximately 8 miles east of Lincoln, MT. The Agents contacted Montana Highway Patrol Officers and a traffic stop was conducted and O'KEEFE and his passenger (Brandon Michael CAMPBELL, DOB: 5/31/77,

| | | |
|---|---|---|
| 11. DISTRIBUTION: REGION AMRI, OC Seattle FD; DISTRICT; OTHER | 12. SIGNATURE (Agent) S/A Wes Hearon [signature] | 13. DATE 8/10/92 |
| | 14. APPROVED (Name and Title) RAC Ben C. Yarbrough [signature] | 15. DATE 8/10/92 |

DEA Form 6 (May 1980) hwm 8/10/92

DEA SENSITIVE
DRUG ENFORCEMENT ADMINISTRATION
This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.
Previous edition may be used.

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION (Continuation) | 1. FILE NO. GFRM-92-4045 | 2. G-DEP IDENTIFIER IA2-CO |
|---|---|---|
| 4. Page 2 of 2 | 3. FILE TITLE O'KEEFE, Michael | |
| 5. PROGRAM CODE | 6. DATE PREPARED 8/10/92 | |

stop was conducted and O'KEEFE and his passenger (Brandon Michael CAMPBELL, DOB: 5/31/77, Driver License number 516767666) were detained and a search of the vehicle was conducted after RAC Yarbrough obtained permission from O'KEEFE. S/A Hearon advised O'KEEFE of his Constitutional Rights and advised O'KEEFE that they were looking for a substantial amount of cocaine. O'KEEFE advised S/A Hearon that he was not carrying cocaine. Approximately 15 minutes into the search of this vehicle, RAC Yarbrough found approximately 1/2 ounce of cocaine concealed in the body portion of the pickup, behind the passenger seat. S/A Hearon approached O'KEEFE and advised him of RAC Yarbrough's find. O'KEEFE told S/A Hearon that was all the cocaine that he had, that he was a cocaine user, and that the agents would not find anymore cocaine.

6. Approximately 20 minutes later, the Officers and Agents drove the Chevy pickup back to Lincoln, MT, where a further search was conducted of the vehicle using a lift. During the above mentioned search, S/A Hearon questioned O'KEEFE. O'KEEFE advised that he had obtained the cocaine from Scott FEIDEN, who owed him money for painting his residence in Great Falls, MT approximately 2 years ago, as a payment.

7. O'KEEFE advised that he was willing to cooperate with DEA and was give an opportunity to give a complete confession to the Highway Patrolmen.

INDEXING:

[redacted]

DEA Form - 6a (May 1980) hmm 8/10/92

DEA SENSITIVE

DRUG ENFORCEMENT ADMINISTRATION

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the Agency to which loaned.

Previous edition may be used.

3

U.S. Department of Justice
Drug Enforcement Administration

# REPORT OF INVESTIGATION

Page 1 of 2

| 1. PROGRAM CODE | 2. CROSS FILE / RELATED FILES | 3. FILE NO. | 4. G-DEP IDENTIFIER |
|---|---|---|---|
| | ☒ GFRM-92-4041 | RM-92-Z003 | GN2-S1 |
| 5. BY: TFA Bryan Lockerby<br>AT: Great Falls RO | ☒ SRM-92-0014<br>☐<br>☐<br>☐ | 6. FILE TITLE<br>COSSACK MOTORCYCLE GANG | |
| 7. ☐ Closed ☐ Requested Action Completed<br>☐ Action Requested By: | | 8. DATE PREPARED<br>9/22/92 | |

9. OTHER OFFICERS: TFA Larry Renman

10. REPORT RE: Debriefing of SRM-92-0014 on 9/21/92

DETAILS:

1. On 9/18/92, TFA's Lockerby and Renman met with SRM-92-0014.

2. SRM-92-0014 related that he/she has observed three firearms that belong to Mike "Goat" SNIDER. The first weapon was described as a .44 caliber Ruger Blackhawk "Old Rebel" pistol, Serial number 140-27716 (NCIC Negative). This weapon was kept on the headboard of SNIDER'S waterbed at his residence.

3. Next to the bed, SNIDER keeps a single-shot shotgun with a sawed-off barrel, approximately 18" long. No serial number was visible.

4. At the CMC shop, the CI observed what he believed was a .32 caliber semi-auto pistol.

5. All three weapons were loaded.

6. SNIDER recently returned from a "run" to Helena, Butte, and Missoula. He supposedly assaulted an Indian, male, in Butte and put him in the hospital.

7. On 9/15/92, Debbie H. GEORGE was arrested by the Great Falls Police after she attempted to shoot SNIDER while at 905 6th St N.W., Great Falls, MT. SNIDER had apparently punched GEORGE as he was attempting to break up his relationship with her. His new girlfriend, Patty LIMA, was in the trailer when GEORGE pulled up and drew the gun. SNIDER escaped out of a back door and the police apprehended GEORGE shortly thereafter. She was in possession of a .22 caliber, semi-automatic handgun. (Refer to GFPD CR#25464)

8. GEORGE is on State probation for Aggravated Assault and Attempted Mitigated Deliberate Homicide. GEORGE will be charged with Probation Violation out of Lewis and Clark County, Felony Assault and other felony offenses by Cascade County, and Felon in Possession of Firearm by the U.S. Attorney's Office via ATF.

| 11. DISTRIBUTION: | 12. SIGNATURE (Agent) | 13. DATE |
|---|---|---|
| REGION AMRI, ODC<br>Seattle FD | TFA Bryan Lockerby | 9/25/92 |
| DISTRICT | 14. APPROVED (Name and Title)<br>SAC Sam C. Yarbrough | 15. DATE<br>9/25/92 |
| OTHER | | |

DEA Form - 6 (May 1980) bmm 9/22/92

DEA SENSITIVE
DRUG ENFORCEMENT ADMINISTRATION

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.
Previous edition may be used

U.S. Department of Justice
Drug Enforcement Administration

| | | |
|---|---|---|
| REPORT OF INVESTIGATION *(Continuation)* | 1. FILE NO. RM-92-Z003 | 2. G-DEP IDENTIFIER GN2-91 |
| | 3. FILE TITLE COSSACK MOTORCYCLE GANG | |
| 4. Page 2 of 2 | | |
| 5. PROGRAM CODE | 6. DATE PREPARED 9/22/92 | |

9. Following the disturbance, SNIDER debated moving out of the trailer. He later told SRM-92-0014 that he had changed his mind and he would be moving a mobile home onto the CMC lot where the shop complex is located and live there.

10. On the afternoon of the incident, Gary "Tiny" ROBERSON showed up at 905 6th St N.W., and asked SNIDER what he had. "Nothing, but we're not out of business though.", SNIDER responded. SRM-92-0014 stated that they were referring to methamphetamine.

11. SNIDER usually has marijuana available. Michael "Mick" JACOBSEN went over to the trailer recently and obtained 1/4 ounce of marijuana from SNIDER.

12. SRM-92-0014 stated that the female referred to as "The Bookkeeper" is known as "Susan" and she is involved in a relationship with ROBERSON. SNIDER recently gave Susan his paycheck that he earned from being a bouncer at the Playground Bar.

13. Additional debriefings to follow.

INDEXING:

[redacted]

DEA Form - 6a (May 1980) hmm 9/22/92

DEA SENSITIVE
DRUG ENFORCEMENT ADMINISTRATION
This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the Agency to which loaned.
Previous edition may be used.

Department of Justice
Drug Enforcement Administration

## REPORT OF INVESTIGATION

Page 1 of 1

| | | | |
|---|---|---|---|
| 1. PROGRAM CODE | 2. CROSS FILE RELATED FILES | 3. FILE NO. RM-92-Z003 | 4. G-DEP IDENTIFIER GK2-S1 |
| 5. BY: SA Gale D. Williams<br>AT: Great Falls RO | ☒ SRM-92-0014<br>☐<br>☐<br>☐<br>☐ | 6. FILE TITLE<br>COSSACK MOTORCYCLE CLUB | |
| 7. ☐ Closed ☐ Requested Action Completed<br>☐ Action Requested By: | | 8. DATE PREPARED<br>9/28/92 | |

9. OTHER OFFICERS: None

10. REPORT RE: Information from SRM-92-0014.

DETAILS:

1. On 9/14/92, SRM-92-0014 contacted SA Williams at the GFRO regarding activities of the COSSACK MOTORCYCLE CLUB (CMC) meeting on Saturday, 9/26/92, at Custom Motorcycle and Cars, Great Falls, MT.

2. SRM-92-0014 advised that SRM-92-0014 was being considered for "prospect" but had been requested to spend more time around the CMC members before becoming an official CMC prospect. SRM-92-0014 advised that the president of the CMC, TINY, had in TINY's possession an Inter Arms 9mm automatic pistol, which TINY had fired on an automatic mode. TINY attached a Harley Davidson oil filter to the end of the pistol causing it to be used as a silencer, which when fired made very little sound. The vice-president of the CMC, described as being "big" and weighing between 280-300 pounds, was carrying a .45 pistol in a shoulder holster with two clips attached to it. Michael SNIDER (GOAT) was in possession of a T-Barker single shot shotgun, unknown gauge.

INDEXING SECTION:

1. [redacted]

2 [redacted]

| | | |
|---|---|---|
| 11. DISTRIBUTION: AMRI/ODC<br>REGION SEATTLE FD<br>DISTRICT<br>OTHER | 12. SIGNATURE (Agent)<br>Gale D. Williams SA<br>14. APPROVED (Name and Title)<br>Ben C. Yarbrough RAC | 13. DATE 11/4/92<br>15. DATE 11/3/ |

DEA Form - 6 (May 1980) mre/ 10/1/92

DEA SENSITIVE
DRUG ENFORCEMENT ADMINISTRATION
This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.
Previous edition may be used

U.S. Department of Justice
Drug Enforcement Administration

## REPORT OF INVESTIGATION

Page 1 of 2

| 1. PROGRAM CODE | 2. CROSS FILE / RELATED FILES | 3. FILE NO. | 4. G-DEP IDENTIFIER |
|---|---|---|---|
| | | RM-92-Z003 | GN2-S1 |
| 5. BY: TFA Bryan Lockerby<br>AT: Great Falls RO | [X] SRM-92-0014<br>[ ]<br>[ ]<br>[ ]<br>[ ] | 6. FILE TITLE<br>COSSACKS MOTORCYCLE CLUB | |
| 7. [ ] Closed [ ] Requested Action Completed<br>[ ] Action Requested By: | | 8. DATE PREPARED<br>10/14/92 | |

9. OTHER OFFICERS: Refer to paragraph 4.

10. REPORT RE: Conversation between SRM-92-0014 and Gary ROBERSON.

DETAILS:

1. On 10/13/92, at RAC Yarbrough's request, TFA Lockerby arranged to meet with SRM-92-0014 and to place a phone call to Gary "Tiny" ROBERSON in order to determine the extent of ROBERSON'S knowledge concerning the seizure of Mike SNIDER'S van in West Yellowstone, MT.

2. The CI first attempted to call ROBERSON at his home and the CMC shop with no success. Approximately 1/2 hour later, at 1530 hours, SRM-92-0014 spoke to "Sue" who stated she could pass on a message to "Tiny". The CI was reluctant to say anything and "Sue" stated she would "hear about it later anyway". The CI left a short message and stated he would call back at 1600 hours.

3. At 1600 hours, the CI telephonically contacted ROBERSON, who simply instructed SRM-92-0014 to meet him at "the shop". TFA Greg Church monitored and recorded both phone calls.

4. SRM-92-0014 was fitted with an electronic transmitting device and followed to the CMC Shop. Surveillance officers included TFA's Lockerby, Church, Wells, and Funyak. TFA's Church and Wells operated the receiver unit.

5. At 1634 hours, the CI arrived at the CMC Shop. ROBERSON and "Brian", the parts manager, were present. ROBERSON asked for details concerning the apprehension and detention of SNIDER and of the van. The CI discussed these details with the two.

6. During the course of the conversation, it became obvious that ROBERSON was aware of SNIDER's activities and intentions to obtain dangerous drugs. He stated that GOAT (SNIDER) had just called him and that "they (police) had confiscated the van". ROBERSON stated, "If he would have done what he was told to do", referring to SNIDER's current troubles.

| 11. DISTRIBUTION: | 12. SIGNATURE (Agent) | 13. DATE |
|---|---|---|
| REGION AMRI, ODC<br>Seattle FD<br>DISTRICT<br>OTHER | TFA Bryan Lockerby | 10/21/92 |
| | 14. APPROVED (Name and Title)<br>RAC Ben E. Yarbrough | 15. DATE<br>10/23/92 |

DEA Form - 6 (May 1980) hmm 10/15/92

DEA SENSITIVE
DRUG ENFORCEMENT ADMINISTRATION

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.
Previous edition may be used

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION (Continuation) | 1. FILE NO. RM-92-Z003 | 2. G-DEP IDENTIFIER GN2-S1 |
|---|---|---|
| 4. Page 2 of 2 | 3. FILE TITLE COSSACKS MOTORCYCLE CLUB | |
| 5. PROGRAM CODE | 6. DATE PREPARED 10/14/92 | |

7. ROBERSON was aware that SNIDER had been stopped in Nevada and asked if SNIDER had been able to remove "the stuff" from the van. "Everything isn't lost yet if he got his stuff off the van.", ROBERSON stated. "If nothing's in it - we're okay.", ROBERSON added that it was important to not "ever panic".

8. At 1644 hours, the CI departed and was met by surveilling agents at a pre-arranged location. At this time the CI also showed TFA's the rear bumper of his/her vehicle which had been utilized to transport dangerous drugs from Los Angeles, CA to Nevada. The drugs were reportedly concealed within the rear bumper as it had clearly been removed and reattached. TFA's Funyak and Church observed the rear bumper was no longer properly seated and the fastening system had been disturbed.

9. The tape of the telephone calls and body-wire were turned over to TFA Lockerby by TFA Church on 10/13/92. These two items of evidence were labelled as non-drug exhibits N-10 (phone) and N-11 (body wire). A DEA 7a was completed and submitted.

CUSTODY OF EVIDENCE:

1. Exhibit N-10 - cassette recording of telephone call between SRM-92-0014 and Gary ROBERSON on 10/13/92. The exhibit was recorded by TFA Church and turned overt to TFA Lockerby, who processed it into evidence via DEA 7a.

2. Exhibit N-11 - cassette recording of Consensual Eavesdropping (body wire) transmission during conversation between SRM-92-0014 and Gary ROBERSON on 10/13/92. TFA Church recorded the conversation on Exhibit N-11 and then turned it over to TFA Lockerby, who processed it into evidence via DEA 7a.

INDEXING:

1. [redacted]
2.

DEA Form 6a (May 1980) - hmm 10/15/92

DEA SENSITIVE

DRUG ENFORCEMENT ADMINISTRATION

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the Agency to which loaned.



Previous edition may be used.

## REPORT OF INVESTIGATION

Page 1 of 2

| | | | |
|---|---|---|---|
| 1. PROGRAM CODE | 2. CROSS FILE / RELATED FILES | 3. FILE NO. RA-92-X034 | 4. G-DEP IDENTIFIER IG2-S2 |
| 5. BY: SA Dennis J. Baker AT: South Lake Tahoe | ☐ ☐ ☒ SRM-92-0014 ☐ ☐ | 6. FILE TITLE JOHNSON, Robert Steven et al. | |
| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | | 8. DATE PREPARED 11/12/92 | |

9. OTHER OFFICERS: TFA Jack Schmidt

10. REPORT RE:
Debriefing of SRM-92-0014

DRUG RELATED INFORMATION:

1. Reference is made to all previous DEA 6's with this case number and file title.

2. On 11/10/92 SA Dennis Baker and TFA Jack Schmidt debriefed SRM-92-0014 regarding drug trafficking activities in the northern Nevada and eastern California area. SRM-92-0014 stated that he met with Mitch BATESEL, previously identified as an assosiate of Steven JOHNSON- a major methamphetamine trafficker, on 11/9/92 in the SH-BOOM SALOON located on highway 395 north in Washoe Valley. SRM stated that the meeting was an initial contact and a period of general conversation. SRM stated that he/she will follow up the conversation and attempt to meet with BATESEL again to obtain conversation regarding narcotics.

3. SA Baker and TFA Schmidt instructed SRM to begin targeting the BROTHER'S BAR, and the GOALPOST BAR, both located in South Lake Tahoe.

NON DRUG RELATED INFORMATION:

None at this time

ASSET RELATED INFORMATION:

None at this time

INDEXING SECTION:

1. [redacted]
2.
3.

| | | |
|---|---|---|
| 11. DISTRIBUTION: LAIU, Great Falls MT. REGION DISTRICT OTHER | 12. SIGNATURE (Agent) SA Dennis J. Baker | 13. DATE 11/12/9[illegible] |
| | 14. APPROVED (Name and Title) RAC Joel Gutensohn | 15. DATE 11/12/[illegible] |

DEA Form - 6 (May 1980) djb

DEA SENSITIVE
DRUG ENFORCEMENT ADMINISTRATION
This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.
Previous edition may be used.

U.S. Department of Justice

Drug Enforcement Administration

*Washington, D.C. 20537*

JUL 21 1995

CERTIFIED MAIL - RETURN RECEIPT REQUESTED

Gale R. Gustafson, Esquire
400 South Main Street, Suite 101
Conrad, Montana 59425

Dear Mr. Gustafson:

This is in response to your recent correspondence, dated April 25, 1995, in which you once again request an award payment under Title 28 U.S.C. § 524(c) for your client, Terry Brunner.

In that correspondence you allege that Mr. Brunner worked for the Drug Enforcement Administration (DEA) "around the clock", and is, therefore, entitled to additional compensation. As you have been previously informed, Mr. Brunner has never been an employee of DEA. He is a private individual who at one point furnished information to this agency in connection with an investigation into illegal drug trafficking.

A careful reading of the Cooperating Individual Agreement that Mr. Brunner signed on August 3, 1992, reveals that Mr. Brunner was informed in writing that he has "no official status, implied or otherwise, as Agent or employee of DEA." Therefore, he is not entitled to additional payments for his assistance to DEA. You state in your most recent correspondence that the Federal and State of Montana minimum wage laws require DEA to compensate Mr. Brunner for his "around the clock" services to DEA. This assertion is incorrect. As explained in detail above, Mr. Brunner was not at any time employed by DEA, and, therefore, he is not entitled to any payment, either as minimum wage or overtime.

Between August 4, 1992, and November 23, 1992, Mr. Brunner received payments in the amount of $10,729.95 as compensation for his assistance to DEA, as well as for his expenses incurred as a result of this assistance. Additionally, on September 30, 1992, Mr. Brunner was provided $3,000 for the purchase of evidence. Although your computation of the compensation received by Mr. Brunner includes this $3,000, that money was given to

JUL 27 1995

Mr. Brunner to purchase illegal drugs as evidence. However, it appears from your last correspondence that Mr. Brunner kept this $3,000 instead of using it for its intended purpose.

Further, on October 26, 1992, Mr. Brunner was found to be in possession of a small quantity of marijuana and a handgun while assisting Agents of the Montana Narcotics Investigation Bureau. This was in violation of the law and was another violation of the Cooperating Individual Agreement that Mr. Brunner signed.

Additionally, further review of this matter reveals that the payment voucher dated November 23, 1992, indicates the intention of DEA to pay Mr. Brunner an additional sum of $2,000 at the conclusion of his participation in the criminal trial. However, Mr. Brunner failed to appear at the criminal trial, and ignored a United States District Court subpoena. As you are aware, Mr. Brunner was informed in writing at the time that he signed the Cooperating Individual Agreement that he may be called upon to testify at criminal trials regarding any information that he provided. Therefore, in light of Mr. Brunner's violation of the Cooperating Individual Agreement, DEA decided that Mr. Brunner had already been more than adequately compensated for his limited participation.

Mr. Brunner's participation did assist in the seizure of two assets, $7,500 and a residence. The $7,500 was forfeited to the United States, and, as a result of a settlement agreement, the residence was returned to the owner in exchange for $30,000. To date the United States has received only $22,500 pursuant to this settlement agreement. In accord with former Administrator Robert C. Bonner's correspondence of June 15, 1993, DEA's Billings Resident Office has forwarded Mr. Brunner's request for a percentage of these assets. As this office has previously informed you, awards under 28 U.S.C. § 524(c) are paid at the discretion of the Attorney General or her designee, which in this instance is the DEA. In this instance, DEA has exercised its discretion and determined that DEA has already compensated Mr. Brunner in an amount that is appropriate in light of the information and assistance that was provided.

Based upon the foregoing, your request for additional compensation is once again denied. This matter is now closed in this office.

You also requested copies of both tape recorded and written debriefings of Mr. Brunner. This office is unable to provide you with these documents. A review of DEA's files regarding this

matter reveals that no tape recordings were made of any debriefings with your client. Requests for documents, such as written debriefings, must be made in conformity with the Freedom of Information Act (FOIA). Any FOIA request must be directed to: Drug Enforcement Administration, Freedom of Information Section, Washington, D.C. 20537.

Sincerely,

Dennis F. Hoffman
Chief Counsel

DEA SENSITIVE
This manual is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.



information" may be used. Sources of information will be identified in an administrative memorandum (see 6211.7) attached to the report.

C. There are three criteria that must be met to establish a person as a DEA informant:

1. The person is in a position to measurably assist DEA in a present or future investigation.
2. To the extent a prudent judgment can be made, the person will not compromise DEA interests and activities.
3. The person will accept the measure of direction necessary to effectively utilize his services.

D. If there is reason to believe that an informant or defendant/informant has committed a serious criminal offense (i.e., a felony), the appropriate United States Attorney's Office will be notified. The U.S. Attorney's Office, after consultation with DOJ, will determine whether DEA may continue to use the individual as an informant.

E. In the situation described in D above, the law enforcement agency having jurisdiction over the crime will also be notified. If it is felt that immediate and full notification would jeopardize an ongoing investigation or endanger the life of an agent or other person, then this notification may be limited to just apprising the agency that the crime was committed. In this instance, all evidence of the crime will be preserved for subsequent transfer to the agency at a point in time when full disclosure is possible.

F. Informants under the control of another agency are not subject to the requirements of the Domestic Operations Guidelines. Frequently, however, situations occur in which control of the informant is shared between DEA and the other agency, or the control by the other agency is nominal, or DEA provides direction to the informant through the other agency. The nature of the relationship between the three parties will be continuously reviewed by the agent involved and his immediate supervisor. Should control shift to where more rests with DEA than the other agency, the informant will be established as a DEA informant.

G. The following additional requirements shall apply to DEA's development of defendant/informants:

1. The approval of the appropriate prosecutor (i.e., Federal, state, or local) will be obtained <u>prior</u> to seeking the cooperation of a defendant.
2. A defendant may be advised that his cooperation will be brought to the attention of the appropriate prosecutor. No further representations or assurances may be given without approval by the SAC. The prosecuting attorney shall have sole authority to decide whether or not to prosecute a case against a defendant/informant.
3. The appropriate prosecutor shall be advised of the nature and scope of the defendant's cooperation throughout the period of his use. The procedures and frequency of this reporting shall be set by the prosecutor.
4. Prior to formally seeking the <u>dismissal</u> of any criminal charge against a defendant/informant, the SAC must obtain the written approval of the Headquarters (DO).

Rather than restate this objection in response to the specific paragraphs of plaintiff's proposed findings, we request that it be considered a general objection applicable to each paragraph where matters of law are set forth. Without waiving this general objection, we will respond to the factual matters contained in plaintiff's proposed findings. To the extent that we provide a specific response to matters of law raised in plaintiff's proposed findings, we do so for the convenience of the Court, not to waive our general objection.

Proposed Finding No. 1: Terry C. Brunner, a U.S. Citizen, previously worked successfully as an Informant for the Canadian government and U.S. Customs and was referred to the Drug Enforcement Administration by Special Agent, Mark Beuchamp, of U.S. Customs through Mark McKinnon of the Great Falls Office of U.S. Customs in the summer of 1992.

Response: No objection.

Proposed Finding No. 2: Terry C. Brunner serving on a trial basis as an Informant working out of the Great Falls DEA office, successfully purchased cocaine from one Michael O'Keefe and received $500.00 from the DEA for his efforts.

Response: No objection.

Proposed Finding No. 3: Following this successful drug purchase by Terry C. Brunner from Mike O'Keefe on behalf of the Drug Enforcement Administration he entered into discussions with the Great Falls DEA and other law enforcement officials comprising the Drug Task Force, about serving as an Informant for the purpose of infiltrating the motorcycle or biker community, operating locally out of the Cossak's Motorcycle Club.

Response: No objection.

Proposed Finding No. 4: On or about or sometime prior to August 3, 1992 Terry C. Brunner and the local DEA Special Agents, Wes Hearon, and Gale Williams, and Ben Yarbrough, the Resident Agent in Charge of the Great Falls DEA Office, conferred with the Seattle Regional Office Special Agent In Charge, Raymond J. McKinnon, and/or his designee, Donald Young, and sought and received the requisite authorization to open up the OCDETF Project, a multi-state drug trafficking investigation of the biker community.

Response: We object to the proposed finding because Mr. Brunner never conferred with Raymond J. McKinnon or Donald Young. See Defendant's Appendix 21.

Proposed Finding No. 5: On August 3, 1992 immediately following the authorization from the Special Agent In Charge of the Seattle

Response: We object to this proposed finding, as the referenced letter referred not to a particular investigation, but to testimony that Mr. Brunner was to provide and never did.

Proposed Finding No. 23: In a letter to U.S. Senator Max Baucus of Montana, dated June 15, 1993, Robert C. Bonner, the Administrator of the Drug Enforcement Administration in referring to Raymond J. McKinnon's letter of February 10, 1993, reiterated his Agency's assurance that it will process and submit Mr. Brunner's request for a percentage of the net proceeds realized from the sale of any assets seized in the investigations in which he assisted the Great Falls Resident Office.

Response: We object to this proposed finding as mis-characterizing the referenced document. In this document, after explaining that any payments are discretionary, Mr. Bonner stated: "if any asset seized as a result of Mr. Brunner's efforts is forfeited to the United States, DEA will submit to the responsible officials Mr. Brunner's request for a percentage of the net proceeds realized from the sale of the asset." Plaintiff's Appendix 43.

Proposed Finding No. 24: The Defendant has admitted in Paragraph 9 of DEFENDANT'S ANSWER filed herein that the Plaintiff, Terry C. Brunner "provided assistance and information to the Drug

Enforcement Administration (DEA) which resulted in six (6) individuals pleading guilty and one (1) individual being found guilty at trial, and that Plaintiff testified ... before a grand jury."

Response: No objection.

Proposed Finding No. 25: The Declaration of Christian (sic) Sisk is not in proper Affidavit form or sworn to before a Notary or other person authorized to administer oaths, and, therefore, is legally insufficient under Rule 56(f), R.C.F.C., and contradicted by the Defendant's own Answer to Interrogatory No. 13 and the DEA Agents Manual and payments made to Mr. Brunner.

Response: We object to this proposed finding, as the declarations are in compliance with the Rules of this Court and are not contradicted by any of the documents upon which Mr. Brunner relies.