# In the United States Court of Federal Claims

No. 98-554C
(Filed June 4, 2012)
NOT FOR PUBLICATION

```
* * * * * * * * * * * * * * * * * * * * * * * * *
                                                *
RONALD W. STEVENS,                              *
as Personal Representative of the               *
estate of TERRY C. BRUNNER,                     *
                                                *
                    Plaintiff,                  *
                                                *
    v.                                          *
                                                *
THE UNITED STATES,                              *
                                                *
                    Defendant.                  *
                                                *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

## MEMORANDUM OPINION AND ORDER

WOLSKI, Judge.

      Plaintiff Ronald W. Stevens, personal representative of the estate of Terry C. Brunner, seeks damages arising from the alleged breach of an oral contract between Mr. Brunner and the United States Drug Enforcement Administration ("DEA" or "Drug Enforcement Administration"), to compensate for assistance Mr. Brunner rendered in prosecuting drug traffickers.[1]  On motion and cross-motion for summary judgment on liability, the Court determined that a contract was formed in August 1992 under which Mr. Brunner was to receive a monthly salary of $2,000 plus expense reimbursement for his services as a confidential informant. *Brunner v. United States*, 70 Fed. Cl. 623, 647-49 (2006).  The Court also found that no DEA agent with whom Mr. Brunner dealt possessed the authority, express or implied, to enter an agreement that entitled Mr. Brunner to awards of $2,500 per indictment and twenty-five percent of the value of assets seized or forfeited.  *Id.* at 649.  On subsequent motion and cross-motion for summary judgment regarding damages, the Court granted plaintiff's motion for summary judgment with respect to damages of $200 for the balance of the September 1992 salary owed to Mr. Brunner.  *Stevens v. United States*, No. 98-554, 2009 WL 2488104 (Fed. Cl. Aug. 14, 2009), at *6.  The Court granted defendant's cross-motion for summary judgment with

---

      [1] Terry C. Brunner died on June 7, 2007, and Ronald W. Stevens was appointed Personal Representative of Mr. Brunner's estate.  Pl.'s Mot. Substitution at 1.  Mister Stevens was substituted as the plaintiff in this case on March 19, 2008.  *See* Order (March 19, 2008).

respect to salary for December 1992 and relocation expenses. *Id.* The two motions were denied in all other respects because genuine questions of material fact remained regarding damages for salary for August and November 1992 and the payment of an additional $2,000 for Mr. Brunner's testimony. *Id.* at 4, 5-6, 8.

Presently before the Court is plaintiff's motion for reconsideration, in which plaintiff challenges some of the Court's determinations in *Brunner* and *Stevens*. *See* Pl.'s Mot. for Recons. and Amendment of Mem. Op. and Order ("Pl.'s Mot. Recons."). Plaintiff asks the Court to reverse the finding in *Brunner* that there was no evidence of a contract between DEA and Mr. Brunner that would obligate DEA to pay Mr. Brunner rewards for indictments, convictions, or forfeitures. *See id.* at 1-8. Plaintiff also asks the Court to reverse itself on every issue upon which plaintiff was denied summary judgment in *Stevens*. *See id.* at 1-2. Plaintiff requests that upon reconsideration, the Court award plaintiff damages of: 1) $7,000 in salary for the months of August, October,[2] November, and December of 1992; 2) $2,501.24 in relocation expenses; 3) $2,000 for grand jury testimony against Michael "Goat" Snider; 4) $2,500 in rewards for each of the six defendants who were indicted as a result of Mr. Brunner's investigative efforts (a total of $15,000); and 5) an order directing defendant to provide an accounting of assets seized and forfeited by the six defendants indicted as a result of Mr. Brunner's efforts and to "process and submit" plaintiff's claim for twenty-five percent of the net proceeds realized. *Id.* at 1-2, 23.

The Court concludes that plaintiff has not met the standard for reconsideration. For the reasons that follow, plaintiff's motion is **DENIED**.

---

[2] Plaintiff's discussion of October's salary on reconsideration is rife with contradiction. Plaintiff states both that Mr. Brunner received the full October salary and that he did not receive the full salary, but is entitled to $1,000 more. *Compare* Pl.'s Mot. Recons. at 8 (stating that Mr. Brunner "received only $3,800 of his promised $2,000 monthly salary for his five plus months" of work, referring to $1,800 worth of salary payment vouchers for September 1992 and a $2,000 payment voucher for October 1992) *with* Pl.'s Mot. Recons. at 12 ("[I]t is apparent that there is no genuine factual dispute as to the DEA's obligation to pay Plaintiff Brunner another $1,000 for his October salary."). Not only is plaintiff's discussion of October damages self-contradictory, but insofar as the motion for reconsideration does assert a claim for October damages, this is the first time plaintiff has clearly asserted it. Damages for October's salary were not alleged in the complaint. Nor was October's salary unambiguously included in the enumerated list of damages plaintiff provided in his motion for summary judgment on damages. Pl.'s Mot. Summ. J. at 7; Pl.'s Reply in Supp. Mot. Summ. J. at 19 (requesting "[n]o less than $6,200.00 for salary owed," a figure that appears to be based on $2,000 for August, November, and December, and $200 for September). Because damages for October were never pled, the Court has never ruled on them. With no interlocutory order with respect to October damages, it is unclear exactly what the Court could reconsider with respect to October's salary.

# I. BACKGROUND

## A. Facts

Mister Brunner served as an undercover informant throughout his adult life for various law enforcement agencies in both Canada and the United States. Brunner Dep. 14-20. Mister Brunner served as an undercover informant, or cooperating individual ("CI"), for DEA from August 3, 1992 until January 6, 1993. *Brunner*, 70 Fed. Cl. at 625-26. Shortly before his official activation as a CI, Mr. Brunner met with DEA field agents Wes Hearon and Gale Williams, as well as Resident-Agent-in-Charge ("RAC") Ben Yarbrough in the Great Falls DEA office. *Id.* at 625; Brunner Dep. at 35. At this meeting, Mr. Brunner shared information about an upcoming drug delivery that he learned about while buying motorcycle parts from a repair shop that also served as the headquarters of a motorcycle club. Brunner Dep. at 35-37. Mister Brunner's information led to the arrest of one defendant, the seizure of one-half of an ounce of cocaine, and the seizure of a Chevrolet pick-up truck. Brunner Dep. at 36-37; *see* App. to Def.'s Resp. to Pl.'s Mot. Recons. ("Def.'s App.") at 2. After Mr. Brunner shared this information, DEA officials asked him to infiltrate the Great Falls, Montana biker community --- in particular one motorcycle club whose members were suspected of drug-trafficking. *Brunner*, 70 Fed. Cl. at 625. Mister Brunner was officially activated as a CI at a meeting on August 3, 1992 when he signed a DEA "Cooperating Individual Agreement" form. *Id.* In exchange for Mr. Brunner's assistance, plaintiff alleges that Mr. Brunner was orally promised compensation consisting of: (1) a salary of $ 2,000 per month plus expenses; (2) an award of $ 2,500 per defendant indicted based on his cooperation; (3) an award of twenty-five percent of any assets seized as a result of his work; and (4) relocation expenses for his family. *Id.*

In August 1992, in furtherance of infiltrating the motorcycle club, Mr. Brunner began working at the club's headquarters as a mechanic --- apparently a stepping-stone to full-fledged membership in the club. Brunner Dep. at 128-30. Also during August 1992, Mr. Brunner rented, furnished, and helped install surveillance equipment in a trailer-home for use as a "drug-house" during the infiltration. *Id.*; *see* Def.'s App. at 4, 8-9, 26. Mister Brunner's intelligence and evidence gathering activities included several out-of-state trips with the suspected drug traffickers to purchase narcotics. Brunner Dep. at 131-34, 138-40; *see* Def.'s App. at 6, 11. The assistance and information that Mr. Brunner provided to DEA "resulted in six individuals pleading guilty and one individual being found guilty at trial." *Brunner*, 70 Fed. Cl. at 625-26.

Mister Brunner's status as a CI was officially terminated for unsatisfactory performance on January 6, 1993. *Brunner*, 70 Fed. Cl. at 625-26. His performance was deemed unsatisfactory for two reasons. First, in October 1992, during a routine post-buy search of Mr. Brunner's truck, his DEA handlers located a small amount of marijuana in a coat pocket and a legal firearm in the glove compartment. Def.'s App. at 23-24. Second, in early December 1992, after becoming embittered that DEA only planned to give him $500 for moving expenses, Mr. Brunner retained counsel to recover money from DEA, and in doing so provided a list of potential defendants to his counsel --- thereby placing the success of the undercover operation in jeopardy. *Id.* Seventeen DEA payment vouchers ranging in date from August 4, 1992 through

November 23, 1992 show that Mr. Brunner received over $13,000 for salary, expenses, and rewards during his status as a CI. *Brunner*, 70 Fed. Cl. at 625-26; Def.'s App. at 1-18. In March 1993, Mr. Brunner moved from Conrad, Montana to an unidentified location somewhere in central Wisconsin, then moved to Fort Erie, Ontario six months later. Brunner Dep. at 110-11.

**B. Procedural History**

  *1. Initial Motion and Cross-Motion for Summary Judgment*

  In *Brunner*, the Court found that at the meeting on August 3, 1992, Mr. Brunner and DEA entered an oral contract for a $2,000 monthly salary plus reimbursement of expenses. *Brunner*, 70 Fed. Cl. at 647-49. The Court found that RAC Yarbrough's actual authority to contract for payment of salary and expenses was implied by his authority to approve payments in advance for these purposes. *Id*. at 643-44. The Court based its finding of an oral contract on Mr. Brunner's unrebutted testimony concerning the August 3, 1992 meeting, DEA payment vouchers that referenced the size of the salary and stated it was "owed" to Mr. Brunner, and a memorandum from Special-Agent-in-Charge ("SAC") Raymond McKinnon of the Seattle Division of DEA, signed by Donald W. Young, to plaintiff's attorney that explained Mr. Brunner was "'paid per their agreement.'" *Id*. at 647-49 (quoting Def.'s App. at 30). Whether DEA's obligation to pay Mr. Brunner's monthly salary was effective immediately and whether it ran for the duration of his CI status, were not issues presented to the Court at that time.

  The Court also found that no contract was formed obliging DEA to pay Mr. Brunner rewards for indictments, convictions, or forfeitures, as no agent who dealt with Mr. Brunner had authority, either express or implied, to bind the government in such contracts. *Brunner*, 70 Fed. Cl. at 644. Plaintiff submitted no evidence that any of the DEA agents who worked with Mr. Brunner had express authority to promise rewards. *Id*. As for implied authority, unlike the authority to contract for salary and expenses, which can be implied by the power to pay these in advance, the authority to contract for rewards is not so implied because rewards cannot be paid in advance, but are by nature "based on a contingency beyond the informant's control -- the seizure and forfeiture of a certain amount of property, or the indictment or conviction of a particular target." *Id*. at 646. Nor did the Court find evidence that an unauthorized contract for such rewards was ratified by an official with the authority to bind DEA to such commitments. *Id*. at 645-47.

  *2. Subsequent Motion and Cross-Motion for Summary Judgment on Damages*

  In a subsequent motion for summary judgment on damages, plaintiff moved for damages of: 1) $6,200 in salary for the months of August, September, November, and December of 1992; 2) $2,501.24 in relocation expenses; 3) $2,000 for either expenses or a reward for grand jury testimony against Michael "Goat" Snider; and 4) $2,500 in rewards for each of the six defendants that were indicted as a result of Mr. Brunner's investigative efforts (a total of $15,000). Pl.'s Mot. Summ. J. at 7. In its cross-motion for summary judgment on damages, defendant argued: 1) that Mr. Brunner was not entitled to salary for August 1992 because Mr.

Brunner's contractual period did not begin until September 1992; 2) that plaintiff was not entitled to salary for the months of November and December 1992 because the contractual period ended in October 1992; 3) that plaintiff was not entitled to moving expenses because he lacked evidence establishing the actual cost of his move; 4) that plaintiff was not entitled to any payment for Mr. Brunner's role in the indictment and conviction of Michael "Goat" Snider, because the relevant agreement concerned a broader investigation involving multiple defendants and Mr. Brunner only testified against one defendant; and 5) that plaintiff's request for awards should be denied because the Court already ruled that plaintiff failed to prove the existence of a contract for awards and plaintiff did not meet the standard for reconsideration. Def.'s Cross-Mot. and Resp. to Pl.'s Mot. Summ. J. on Damages ("Def.'s Cross-Mot. Summ. J.") at 2-13.

Ruling on these motions in *Stevens*, the Court granted plaintiff's motion for summary judgment with respect to damages of $200 for the balance of the September 1992 salary owed to Mr. Brunner. *Stevens*, 2009 WL 2488104, at *6. The Court granted defendant's cross-motion for summary judgment with respect to salary for December 1992 and relocation expenses. *Id.* The two motions were denied in all other respects, thus allowing unresolved questions regarding damages for salary for August and November 1992, and the payment of an additional $2,000 for Mr. Brunner's testimony, to survive for trial. *Id.*

## II. DISCUSSION

### A. Legal Standard

Plaintiff cites Rule 59 of the Rules of the United States Court of Federal Claims ("RCFC") as the basis for its motion for reconsideration. Pl. Mot. Recons. at 1. Plaintiff's motion, however, must be decided under both RCFC 54(b) and RCFC 59(a) because plaintiff seeks reconsideration of an interlocutory order. *Wolfchild v. United States*, 68 Fed. Cl. 779, 784 (2005); *Alpha I, L.P. ex rel. Sands v. United States*, 86 Fed. Cl. 126, 129 (2009). Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." RCFC 54(b), therefore, recognizes the principle that interlocutory orders may be modified by the issuing court at any time before a final judgment is entered. *Wolfchild*, 68 Fed. Cl. at 784-85. Rule 59(a)(1) provides in relevant part that this Court may grant a motion for reconsideration to any party as follows: "(A) for any reason for which a new trial has heretofore been granted in an action at law in federal court; [or] (B) for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." RCFC 59(a)(1)(A)-(B). Thus, 59(a)(1)(A) & (B) limit the Court's general power under 54(b) to modify interlocutory orders at any time prior to entry of final judgment to only those modifications permitted by the rules of the common law or equity.

The relevant common law doctrine guiding the exercise of courts' general power to modify interlocutory orders is the law of the case doctrine. *Wolfchild*, 68 Fed. Cl. at 785; *Fla. Power and Light Co. v. United States*, 66 Fed. Cl. 93, 95 (2005); *Official Comm. of Unsecured*

*Creditors of Color Tile, Inc., v. Coopers & Lybrand*, LLP, 322 F.3d 147, 167 (2d Cir. 2003) ("*Color Tile*"); *Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005). Law of the case not only requires trial courts to obey the legal rulings of an appellate court on remand, but the doctrine also provides that a trial court should abide by its own legal rulings during the pendency of the same proceeding. *See Arizona v. California*, 460 U.S. 605, 618 (1983). Law of the case restricts the opportunities of unhappy parties to re-litigate issues that have already been decided and avoids requiring satisfied parties to re-litigate the same. *Color Tile*, 322 F.3d at 167; *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964). Law of the case facilitates bringing litigation to an end. *See Roberts v. Cooper*, 61 U.S. (20 How.) 467, 481 (1858) ("[T]here would be no end to a suit if every obstinate litigant could . . . compel a court to listen to criticisms on their opinions."); *see also White v. Murtha*, 377 F.2d 428, 431 (5th Cir. 1967) (citing *Roberts*, 61 U.S. at 481); *Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981) (citing *Roberts*, 61 U.S. at 481 and *Murtha*, 377 F.2d at 431-32).

Like *res judicata* and collateral estoppel, the law of the case doctrine preserves parties' settled expectations. *See Suel v. Sec'y of Health & Human Servs.*, 192 F.3d 981, 984 (Fed. Cir. 1999). The law of the case doctrine, however, is not an "inexorable command." *White v. Higgins*, 116 F.2d 312, 317 (1st Cir. 1940) (citations omitted); *see also United States v. Turtle Mountain Band of Chippewa Indians*, 222 Ct. Cl. 1, 7 (1979) (citing *White v. Murtha*, 377 F.2d at 431); *Major v. Benton*, 647 F.2d at 112 (citing *Murtha*, 377 F.2d at 431-32); *Murtha*, 377 F.2d at 431-32 (citing *Higgins*, 116 F.2d at 317). As Judge Learned Hand explained, "it is now well settled that the 'law of the case' does not rigidly bind a court to its former decisions, but is only addressed to its good sense." *Higgins v. California Prune & Apricot Grower, Inc.*, 3 F.2d 896, 898 (2d Cir. 1924). Put another way, "[l]aw of the case directs a court's discretion, it does not limit the tribunal's power." *Arizona v. California*, 460 U.S. 605, 618 (1983) (citing *Southern R. v. Clift*, 260 U.S. 316, 319 (1922) and *Messenger v. Anderson*, 225 U.S. 436, 444 (1912)). Law of the case may be departed from if there has been "discovery of new and different material evidence that was not presented [before], or an intervening change of controlling legal authority, or when the prior decision is clearly incorrect and its preservation would work a manifest injustice." *Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 698 (Fed. Cir. 2001) (citing *Smith Int'l Inc. v. Hughes Tool Co.*, 759 F.2d 1572, 1576 (Fed. Cir. 1985)); *see also Color Tile*, 322 F.3d at 167. "'Manifest injustice'" for the purpose of reconsideration is defined as "apparent to the point of being almost indisputable." *Pac. Gas & Elec. Co. v. United States*, 74 Fed. Cl. 779, 785 (2006); *see also Shirlington Limousine & Transp., Inc., v. United States*, 78 Fed. Cl. 27, 31 (2007) (quoting *Pac. Gas & Elec.*, 74 Fed. Cl. at 785); *Alpha I, L.P.*, 86 Fed. Cl. at 129 (quoting *Shirlington Limousine*, 78 Fed. Cl. at 31). Manifest injustice would be present, for instance, if the Court failed to consider evidence previously submitted by one of the parties.

The decision whether to grant a motion for reconsideration is largely within the court's discretion. *Yuba Natural Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990). A motion for reconsideration, however, "is not intended to give an unhappy litigant an additional chance to sway the court." *Am. Contractors Indem. Co. v. United States*, 82 Fed. Cl. 774, 777-78 (2008) (quoting *Prati v. United States*, 82 Fed. Cl. 373, 376 (2008)) (internal citations and quotations omitted). The moving party "'must support the motion by a showing of extraordinary

circumstances which justify relief.'"  *Id.* at 778 (quoting *Fru-Con Constr. Corp. v. United States*, 44 Fed. Cl. 298, 300 (1999)).  The court will not grant a motion for reconsideration when the movant "'merely reasserts arguments previously made.'"  *Crowley v. United States*, 56 Fed. Cl. 291, 294 (2003) (quoting *Ammex, Inc. v. United States*, 52 Fed. Cl. 555, 557 (2002)).

## B. Motion for Reconsideration

### *1. August Salary*

In *Stevens*, the Court concluded that genuine issues of material fact exist concerning whether Mr. Brunner was owed a salary for August 1992.  *Stevens*, 2009 WL 2488104, at *3.  In his motion for reconsideration, plaintiff asserts that there are no genuine issues of material fact regarding Mr. Brunner's allegedly unpaid $2,000 salary for August 1992 and that plaintiff is entitled to it as a matter of law.  Pl.'s Mot. Recons. at 9-10.  He states that he is entitled to this amount because Mr. Brunner immediately began infiltrating the motorcycle club after August 3, 1992, and during August 1992 Mr. Brunner provided DEA with information that led to several arrests and seizures.  *Id*. at 10.

Vouchers for the month of August 1992 show that Mr. Brunner was paid $75 for expenses related to an attempted drug purchase on August 4, Def.'s App. at 1; $500 for information and expenses connected to an arrest and property seizure on August 10, *id.* at 2; another $500 for information and expenses on August 21, *id.* at 3; and $575 for the reimbursement of a security deposit and first-month's rent of a trailer-home on August 27, *id.* at 4.  Viewed in the light most favorable to plaintiff, these vouchers, combined with the fact that Mr. Brunner began working at the motorcycle club's headquarters in August, could lead to the reasonable conclusion that Mr. Brunner immediately began his work pursuant to the August 3, 1992 oral contract and that plaintiff is therefore entitled to $2,000 for unpaid August salary.

On the other hand, Mr. Brunner's deposition testimony seems to indicate that he would be paid "by each job" until the Organized Crime Drug Enforcement Task Force ("OCDETF") project began, at which point he would begin to receive the salary.  Brunner Dep. at 37-38.  A September 1, 1992 start to the OCDETF project is consistent with the August 27, 1992 date of the voucher for the expenses of renting and furnishing the "drug-house," *see* Def.'s App. at 4, and is also consistent with the fact that vouchers referring to salary began on September 1, 1992, *see id.* at 5.  Viewing these facts in the light most favorable to defendant, a reasonable fact-finder could conclude that the OCDETF project did not start until September 1, 1992, so plaintiff would not be entitled to a salary payment for August 1992.  Thus, since genuine issues of material fact remain regarding Mr. Brunner's salary for August 1992, the Court's denial of both the motion and cross-motion for summary judgment on this issue in *Stevens* was proper.[3]

---

[3] Under the language of RCFC 56(c) at the time *Stevens* was decided, granting a motion for summary judgment was proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

In his motion for reconsideration, plaintiff does not introduce new and previously unavailable material evidence relating to the claim for August 1992 salary.  Nor does plaintiff show that the controlling law has changed since *Brunner* and *Stevens*.  There is no manifest injustice in denying plaintiff summary judgment on the issue of salary for August 1992 because questions of material fact as to whether Mr. Brunner was entitled to salary for this month remain open and shall be resolved at trial.  The Court denies plaintiff's motion for reconsideration of August's salary.

### 2.  *October Salary*

In his motion for reconsideration, plaintiff includes a previously unasserted claim for an additional $1,000 for October 1992 salary in his list of damages sought.[4]  Pl.'s Mot. Recons. at 10-12.  Damages for October's salary were not alleged in the complaint.  Plaintiff never sought leave to file an amended complaint.[5]  Nor was October's salary unambiguously included in the enumerated list of damages plaintiff provided in his motion for summary judgment on damages.  Pl.'s Mot. Summ. J. at 7; Pl.'s Reply in Supp. Mot. Summ. J. at 19 (requesting "[n]o less than $6,200.00 for salary owed," a figure that appears to consist of $2,000 for August, November, and December, and $200 for September).  During oral argument on the motions for summary

---

movant is entitled to judgment as a matter of law."  RCFC 56(c)(2002); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  As of July 15, 2011, the language in RCFC 56(c) has been revised in light of revisions to the Federal Rules of Civil Procedure, but the changes to the wording are not substantive.  When deciding a summary judgment motion, the court interprets the facts and inferences therefrom "in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  An outcome-determinative fact is a material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over facts is genuine "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Id.*  To demonstrate a genuine dispute over a material fact, the nonmoving party need not "produce evidence in a form that would be admissible at trial." *Celotex Corp.*, 477 U.S. at 324.  The moving party, however, must cite to documentary evidence in the record, such as exhibits, that support its assertions that material facts are beyond genuine dispute, *see* RCFC 56(c)(1)(2011), unless it is basing its motion for summary judgment on the "absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also Anchor Sav. Bank v. United States*, 59 Fed. Cl. 126, 140 (2003).

[4]  Plaintiff also asserts that Mr. Brunner was paid his entire October salary.  Pl.'s Mot. Recons. at 8 (stating that plaintiff "received only $3,800 of his promised $2,000 monthly salary for his five plus months" of work, referring to $1,800 worth of salary payment vouchers for September 1992 and a $2,000 payment voucher for October 1992); *but see* Pl.'s Mot. Summ. J. at 4 n.2 (stating that "[s]ome portion of th[e] $2,000 [October] payment was for reimbursement of expenses").

[5]  Leave to amend pleadings is not automatically granted.  *See* Order (Apr. 5, 2007) (denying defendant's motion to amend answer).

judgment on damages, plaintiff's counsel clarified that at that point, plaintiff was not seeking damages for salary for October 1992.[6] *Stevens*, 2009 WL 2488104, at *7 n.1.

Mister Brunner was owed $2,000 for October salary and received $2,000 for October, as evidenced by a payment voucher stating that this payment was for "expenses and October salary." Def's App. at 13. Because plaintiff never asserted, until his motion for reconsideration, that salary was still owing for October, the Court in both *Brunner* and *Stevens* considered the $2000 voucher for October to be payment of Mr. Brunner's $2000 salary for October. *Brunner*, 70 Fed. Cl. at 647. Relying on Mr. Brunner's deposition testimony as evidence, plaintiff now argues that $1,000 of this payment was for reimbursable expenses, not salary. Pl.'s Mot. Recons. at 10-12. Plaintiff also notes that the government was given the opportunity, in responding to an interrogatory, to identify the portion of this $2,000 payment that "was for expenses," but defendant instead objected that the interrogatory was irrelevant. *Id*. at 11.

In support of reconsideration, plaintiff offers no new, previously unavailable evidence that would allow the Court to conclude that a certain portion of the $2,000 October voucher was for reimbursable expenses.[7] Instead, plaintiff points to Mr. Brunner's deposition testimony where Mr. Brunner explains that half of his $2,000 salary was used for his family's household expenses and the other half was available to cover his out-of-pocket expenses while working undercover. *See* Pl.'s Mot. Recons. at 11 (citing Brunner Dep. at 148-49). Earlier in the deposition, Mr. Brunner explained that from the very first time he discussed the $2,000 monthly salary with DEA, he understood that "a thousand would go towards [his] family to keep them and a thousand [was] for [him] to work on the street with." Brunner Dep. at 38. But the fact that he may have had, net of household expenses, $1,000 left from his monthly salary that could be used for reimbursable expenses hardly means that one-half of his salary was not salary, but expenses. Rather, it shows that he was expected to use some portion of his salary to cover expenses, which were separately reimbursable once incurred. *See, e.g.*, Jt. Stip. of Facts ¶¶ 12, 21 ; Def.'s App. at 8, 13, 15, 18.

Moreover, as noted above, *see* n.2, *supra*, the question of October salary was not previously before the Court, so there is nothing to reconsider. And after Mr. Brunner successfully opposed the government's motion to amend its answer because of undue delay, *see* Order (Apr. 5, 2007), plaintiff is hardly in a position to seek to amend the complaint to add a

---

[6] Although plaintiff's counsel does not recall his statements on this point in oral argument, plaintiff's counsel has not attempted to refresh his recollection by ordering the argument transcript.

[7] Plaintiff does point to the explanation given on the voucher, which reads "[p]ayment for expenses and October salary." Def.'s App. at 13. If taken in the light most favorable to plaintiff, this explanation is evidence that *some* portion of the voucher was for reimbursable expenses, but no evidence has been offered from which one could conclude how much of the payment covered expenses.

claim regarding October salary. With no recently-discovered evidence, no change in controlling law, and no demonstration of manifest injustice, plaintiff has given the Court no reason to inject a claim for October salary into this stage of the proceedings.

### 3. *November and December Salary*

In *Stevens*, the Court concluded that genuine issues of material fact exist as to whether Mr. Brunner was owed a salary payment for November 1992. *Stevens*, 2009 WL 2488104, at *4. Concerning salary for December 1992, the Court granted summary judgment for defendant, finding no evidence in the record that Mr. Brunner provided any services to DEA in December. *Id.*, at *5, *6.

In his motion for reconsideration, plaintiff contends that Mr. Brunner was entitled as a matter of law to $2,000 in salary for November 1992 and $2,000 in salary for December 1992 because he was not deactivated until January 6, 1993 and remained available to provide services during November and December 1992. Pl.'s Mot. Recons. at 12. Although field agents found one-eighth of an ounce of marijuana and a small caliber pistol in his vehicle on October 26, 1992, plaintiff argues that these breaches of the Confidential Informant Agreement do not relieve the government of its obligation to pay Mr. Brunner's salary because his gun possession was legal, he was not charged with possession of marijuana, and he was not written up for "unsatisfactory performance." *Id.*

Two payments were made by DEA to Mr. Brunner in November 1992. *Stevens*, 2009 WL 2488104, at *4. The first was a payment of $300 made by the South Lake Tahoe office on November 10, 1992 in connection with the investigation of drug trafficking in northern Nevada and eastern California. *Id.*; Def.'s App. at 17. The second was a $500 payment made by the Great Falls, Montana office on November 23, 1992. *Id.*; Def.'s App. at 18. According to the voucher, this payment was "for expenses incurred re RM-92-Z003," and the voucher stated that Mr. Brunner "will be paid in full $2,000 at the end/close of this case." *Id.*; Def.'s App. at 18. In *Brunner*, the Court found this to be a reference to the November 1992 salary, rather than a promised reward. *See Brunner*, 70 Fed. Cl. at 646. Under this interpretation, the vouchers could reasonably be viewed as supporting the position that Mr. Brunner continued to perform work under the contract in November. *Stevens*, 2009 WL 2488104, at *4. The government later contended that the second November voucher represented a separate contract to pay Mr. Brunner $2,000 for testifying in cases which were the fruits of his work.[8] *See* Def.'s Cross-Mot. Summ. J. at 6, 8. Under this interpretation, the first voucher could reasonably be viewed as unrelated to the contract, and the second as reflecting a new contract, implying that Mr. Brunner was not owed a salary for November. *Stevens*, 2009 WL 2488104, at *4. Thus, genuine issues of material fact remain and the Court's denial of summary judgment on the issue of salary for November 1992 was proper. In his motion for reconsideration, plaintiff does not submit

---

[8] Plaintiff appears to agree with the government's interpretation of this voucher. *See* Pl.'s Reply in Supp. Mot. Recons. at 9-10.

previously unavailable evidence regarding the November salary and does not point to any change in the controlling law. Because genuine issues of material fact remain, there is no manifest injustice in denying plaintiff summary judgment on November damages. Thus, plaintiff's motion for reconsideration is denied with respect to November 1992 damages.

Concerning the claim for December 1992 salary, no evidence was identified from which it can be inferred that Mr. Brunner performed any services for DEA in December 1992. *See* Pl.'s Mot. Recons. at 12-13. Nor has any evidence been submitted that shows Mr. Brunner was entitled to a salary for the entire duration of his formal CI status. Moreover, the first letter sent by Mr. Brunner's counsel to DEA, dated December 8, 1992, stated that Mr. Brunner "believes that he was in your employ continuously through most of November," Def.'s App. at 26, and "believes he was still on duty, and willing and ready to work continuously through the end of November." *Id*. at 27. No similar belief was expressed for December, and the letter did not request a December salary. *Stevens*, 2009 WL 2488104, at *5. Since no evidence suggests that the agreement to pay Mr. Brunner a monthly salary was to continue until deactivation as a CI, and no evidence shows any services performed in December, there was no basis upon which an award of December's salary could be made. In his motion for reconsideration, plaintiff does not identify previously unavailable evidence regarding the claim for December salary and does not point to any change in the controlling law. Because plaintiff has not submitted any evidence that Mr. Brunner performed services for DEA during December 1992, there is no manifest injustice in denying plaintiff summary judgment for that month's damages, and no manifest injustice in granting summary judgment to the defendant. Thus, plaintiff's motion for reconsideration is denied with respect to December damages.

### 4. Promise to Pay $2,000 Memorialized on the November 23 Voucher

The November 23, 1992 voucher for $500 paid to Mr. Brunner by DEA "for expenses incurred re RM-92-Z003" also remarked that Mr. Brunner "will be paid in full $2,000 at the end/close of this case." Def.'s App. at 18. In *Brunner*, the Court determined that Mr. Brunner was not entitled to an additional $2,000 because the voucher referred to Mr. Brunner's November salary, not a promised reward. *See Brunner*, 70 Fed. Cl. at 646. The Court explained that if the amount were intended to be a reward, the voucher would have specified that it was a reward as a previous voucher for a reward had done. *Id*.

In his motion for reconsideration, plaintiff argues that the November 23, 1992 voucher entitles him to an additional $2,000 on top of his November salary. Pl.'s Mot. Recons. at 13-15. In response, defendant argues that Mr. Brunner is not entitled to the $2,000 because --- although Mr. Brunner testified at a grand jury hearing concerning one of the targets of DEA's investigation --- he did not appear at another trial, failing to meet his obligations and therefore not earning the $2,000 payment. Def.'s Resp. to Pl.'s Mot. Recons. at 10. In its cross-motion for summary judgment on damages, defendant characterized the voucher as "a deal" under which

"Mr. Brunner was to receive $2,000 in order to close out his cases by testifying for DEA."[9] Def.'s Cross-Mot. Summ. J. at 8 (citing Def.'s App. at 18, 29, 30, 32, 34). As the Court noted in *Stevens*, one could reasonably construe the remark on this voucher as reflecting a new contract to pay Mr. Brunner $2,000, but could also reasonably view the remarks as a reference to the November 1992 salary due under the August 3, 1992 oral contract. *Stevens*, 2009 WL 2488104, at *6. Thus, material facts were at issue concerning whether this voucher references Mr. Brunner's November 1992 salary or whether it represents a new "deal." *Id.*, at *6. Questions of material fact also remained as to whether, if there was a new "deal," Mr. Brunner upheld his end of the bargain and whether the agreement pertained to testimony against only one defendant or against multiple defendants. *Id*. Denial of summary judgment was therefore proper. *Id.*, at *6.

In his motion for reconsideration, plaintiff does not submit previously unavailable evidence regarding this additional payment and does not point to any change in the controlling law. Because genuine issues of material fact remain on this question, there is no manifest injustice in denying plaintiff summary judgment for this additional payment. Thus, plaintiff's motion for reconsideration is denied with respect to this issue.

### 5. *Relocation Expenses*

In his motion for reconsideration, plaintiff argues that he is entitled as a matter of law to $2,501.24 in reimbursement for Mr. Brunner's relocation expenses. Pl.'s Mot. Recons. at 16. In *Brunner*, the Court found that DEA reimbursement of Mr. Brunner's relocation expenses was included in the oral contract entered on August, 3, 1992. *Brunner*, 70 Fed. Cl. at 649. In *Stevens*, the Court granted defendant's cross-motion for summary judgment on damages for relocation expenses because plaintiff offered no evidence of actual moving expenses. *Stevens*, 2009 WL 2488104, at *5.

Plaintiff's damages figure for relocation expenses is based in part on a commercial mover's estimate that it would cost $1,801.24 to move Mr. Brunner's household possessions from Conrad, Montana to Ashland, Wisconsin. *Stevens*, 2009 WL 2488104, at *5; Jt. Stip. of Facts ¶ 22. The remainder is an estimated $700 in expenses, "including meals and lodging, for [Mr. Brunner] and his wife in driving their two vehicles to their destination." *Stevens*, 2009 WL 2488104, at *5; Pl.'s Mot. Summ. J. at 5. These are both *ex ante* estimates of the cost of

---

[9] Although plaintiff has consistently characterized this voucher as representing a promised reward for testifying against Michael "Goat" Snider, the government has never adopted this characterization or referred to the payment as a "reward." Defendant's concession that DEA made this agreement with Mr. Brunner and that it was ratified at "higher levels than the resident agent in charge," Def.'s Cross-Mot. Summ. J. at 8 n.6, does not amount to a concession that DEA promised a reward to Mr. Brunner. A contract with Mr. Brunner to ensure his testimony against Mr. Snider is consistent with the analysis in *Brunner*, *see* 70 Fed. Cl. at 643-44, 646, because a payment in advance could also have been used to obligate Mr. Brunner's performance.

relocating.  Estimates of a hypothetical move made before-the-fact are not proof of the actual costs of his family's move.  *Stevens*, 2009 WL 2488104, at *5.  Prior to his motion for reconsideration, plaintiff did not provide any evidence of the actual costs of Mr. Brunner's move.  *Id.*  Plaintiff does not cure this deficiency in his motion for reconsideration.  Plaintiff identifies no evidence demonstrating that Mr. Brunner used a commercial mover to relocate, or even that he and his wife moved two vehicles to Wisconsin.  On this point, an affidavit or testimony from Mr. Brunner explaining the logistics of his move and stating his belief that the prior estimate was close to the actual costs would have been enough to establish a genuine issue of material fact.  *Id.*  But Mr. Brunner's testimony is only sufficient to establish that he moved to an unidentified location in central Wisconsin.  There is no evidence from which one could infer the means and costs of this move.[10]  Therefore, the Court's grant of summary judgment to defendant on the issue of relocation expenses was proper.

In his motion for reconsideration, plaintiff does not submit previously unavailable evidence regarding the actual cost of Mr. Brunner's relocation and does not point to any change in the controlling law.  There is no manifest injustice in denying plaintiff summary judgment on damages for relocation expenses, or in granting summary judgment to defendant, because plaintiff has not submitted any evidence of the actual costs of Mr. Brunner's relocation.  Thus, plaintiff's motion for reconsideration is denied with respect to damages for relocation expenses.

### 6.  *Rewards for Indictments and Convictions*

In his motion for summary judgment on liability, plaintiff was given the opportunity to establish that the DEA agents with whom Mr. Brunner dealt possessed the authority to enter contracts promising rewards for indictments, convictions, or forfeitures.  In *Brunner*, the Court did not find any evidence that the agents had this authority, express or implied.  *See Brunner*, 70 Fed. Cl. at 644.  Plaintiff now moves for reconsideration of this finding.  Plaintiff asserts that as a matter of law, he is entitled to $15,000 for Mr. Brunner's role in the indictment and conviction

---

[10]  In plaintiff's motion for reconsideration, plaintiff for the first time directs the Court to the federal government's standard mileage reimbursement rate in effect in 1993.  Pl.'s Mot. Recons. at 17 n.5.  This reimbursement rate could have provided a means by which to infer the reasonable costs of Mr. Brunner's move.  Judicial notice of this reimbursement rate, combined with Mr. Brunner's uncontroverted testimony that he relocated from Conrad, Montana to central Wisconsin in March 1993, Brunner Dep. at 110-11, the RAC's implied actual authority to enter contracts promising to pay relocation expenses, and the fact that Mr. Hearon and Mr. Yarbrough believed they had paid Mr. Brunner $500.00 for moving expenses prior to December 4, 1992, *see* Def.'s App. at 23, would have been sufficient to survive the government's cross-motion for summary judgment on this issue.  But this evidence was available to plaintiff when he filed his papers supporting the motion for summary judgment on damages.  A motion for reconsideration is not an opportunity to re-litigate issues that have already been decided, *see Color Tile*, 322 F.3d at 167, and a prior decision will not be reconsidered based on facts that were available but not timely raised by the movant.

of six defendants and twenty-five percent of the net proceeds from the sale of assets seized resulting from his investigative efforts.  Pl.'s Mot. Recons. at 18-20.

Plaintiff argues that RAC Yarbrough had the authority to promise Mr. Brunner these rewards because on October 21, 1992, Mr. Yarbrough signed a voucher for a reward of $2,500, paid to Mr. Brunner out of the Purchase of Evidence/Purchase of Information account.  *Id.* at 19.  Nevertheless, plaintiff introduced no evidence that Mr. Yarbrough or any of the other agents had express authority to promise rewards,[11] and it cannot be inferred that Mr. Yarbrough was authorized to contract to pay rewards merely because Mr. Yarbrough signed the voucher for a reward payment.  As the Court explained in *Brunner*, unlike the authority to contract for salary and expenses, the authority to contract for rewards is not implied from evidence that a reward was paid because rewards are not paid in advance.  A reward is by nature "based on a contingency beyond the informant's control --- the seizure and forfeiture of a certain amount of property, or the indictment or conviction of a particular target."  *Brunner*, 70 Fed. Cl. at 646.  The authority of RACs to contract for salary and expenses is implied from the power of RACs to make up-front payments to informants, in return for which the informant agrees to perform some future act.  Rewards cannot be paid up-front, so the authority to promise them is not similarly implied.

In his motion for reconsideration, plaintiff does not introduce previously unavailable facts or point to a change in the controlling law that could establish that any of the agents possessed the authority to promise to pay rewards.  No manifest injustice is created by this conclusion.

### III.  CONCLUSION

Plaintiff has failed to articulate adequate grounds for reconsideration.  For the foregoing reasons, plaintiff's motion for reconsideration is **DENIED**.  Chambers will contact counsel to schedule a status conference to discuss future proceedings.

**IT IS SO ORDERED.**

s/ Victor J. Wolski

**VICTOR J. WOLSKI**
Judge

---

[11]  Although the government conceded that SACs have the authority to approve rewards of up to $25,000.00 per informant per quarter, *Brunner*, 70 Fed. Cl. at 646, there is no evidence that either SACs or RACs possessed the authority to promise to pay rewards or to pay rewards in advance.