# In the United States Court of Federal Claims

No. 98-554C
(Filed July 22, 2014)
NOT FOR PUBLICATION

```
* * * * * * * * * * * * * * * * *
                                 *
RONALD W. STEVENS,               *
as Personal Representative of the *
Estate of TERRY C. BRUNNER,      *
                                 *
              Plaintiff,         *
       v.                        *
                                 *
THE UNITED STATES,               *
                                 *
              Defendant.         *
                                 *
* * * * * * * * * * * * * * * * *
```

## MEMORANDUM OPINION AND ORDER

WOLSKI, Judge.

     In this post-judgment motion, plaintiff seeks sanctions against the government, alleging an unreasonable delay in processing payment for a court-approved settlement.[1] At the time plaintiff's motion was filed on December 20, 2013, six months had elapsed since the entry of judgment in the above-captioned case, and no payment was forthcoming from the Judgment Fund Group (the Fund). Plaintiff sought a court order compelling payment, as well as interest and attorney's fees for work done by plaintiff's counsel over the course of the litigation. For the reasons discussed below, plaintiff's motion is **DENIED**.

---

[1] In the underlying action, the government agreed to settle a suit brought by Terry C. Brunner alleging the breach of an oral contract made with the Drug Enforcement Agency. *See Stevens v. United States*, No. 98-554C, 2012 WL 2021740, at *1 (Fed. Cl. June 4, 2012). Mister Brunner died on June 7, 2007, while litigation was ongoing. *Stevens*, 2012 WL 2021740, at *1 n.1. Mister Stevens was appointed personal representative of Mr. Brunner's estate and was substituted as the plaintiff on March 19, 2008. *Id.*

## I. BACKGROUND

After the government filed its opposition to plaintiff's motion and plaintiff filed his reply, the Court scheduled a status conference to discuss the jurisdictional questions raised by plaintiff's motion.  Plaintiff identified Rule 11 of the Rules of the United States Court of Federal Claims (RCFC), Rules 69 and 70 of the Federal Rules of Civil Procedure (FRCP), and the court's inherent power to enforce its judgments in support of his motion.  Pl.'s Mot. for Sanctions (Pl.'s Mot.) at 1, 4.  Before proceeding to an evaluation of the merits of plaintiff's claim, a brief chronology of events is in order.

Mister Stevens initially accepted the government's offer of settlement on November 30, 2012, and the Department of Justice (DOJ) sent the paperwork required for payment to plaintiff's counsel.  Def.'s Resp. to Pl.'s Mot. for Sanctions (Resp.) at 3.  Plaintiff later realized that the estate would need to be reopened to obtain the authorization necessary to agree to a settlement.  *Id.*  Once the estate was reopened, the government again extended a settlement offer, which was officially accepted on June 3, 2013, and filed with the Court the next day.  *Id.* at 4.  After the order approving the settlement issued, the Clerk of this court sent instructions to plaintiff delineating the steps necessary to obtain payment.  *See* Pl.'s Reply Brief in Supp. of Mot. (Reply) at 3; *Id.*, Ex. 1 at 3.

Plaintiff followed the instructions from the Clerk and on July 9, 2013, sent a letter to the Fund requesting payment without including a taxpayer identifying number (TIN) for the estate or information for electronic funds transfer (EFT), which is the Fund's preferred method for processing payment.  *See* Resp. at 4.  When payment was not received by August 28, plaintiff's counsel e-mailed government counsel regarding the status of the payment.  *Id.*  Upon request, plaintiff forwarded a copy of the letter sent to the Fund, which was received by government counsel on September 9.  *Id.*

After investigating the matter, government counsel discovered on September 27, that a TIN was required by the Fund in order to process the payment, but his ability to work on the case was impeded due to the government shutdown which began on October 1.  Resp. at 4.  On October 8, government counsel obtained permission to conduct limited work on the case and sent a form to plaintiff's counsel soliciting the additional information needed to release the payment.  *Id.* at 5.  Plaintiff's counsel was allegedly told that, if returned the same day, government counsel would be able to process the form immediately.  Reply at 4–5.  Plaintiff's counsel did return the form the same day; however, it was not processed by the DOJ until after the shutdown ended on October 17, and was not forwarded to the Fund until October 28.  Resp. at 5.  After the payment information was submitted to the Fund, government counsel made at least two attempts to contact the Fund in

November and December, but he was unable to reach anyone because the voicemail was full. *Id.* at 5–6.

The present motion was filed on December 20, 2013. Following the filing of this motion, government counsel made additional attempts to contact the Fund, and was again foiled by the fact that the voicemail was full, or his messages were not returned. Resp. at 6. On January 22, 2014, government counsel was informed by the Fund that it had preliminarily rejected the paperwork, requesting more information to allow the Fund to verify the identity of Mr. Stevens. *Id.* Two days later, government counsel forwarded the requested information to the Fund. As of February 18, the payment had still not been made. *Id.*

After briefing was complete, the Court issued an order setting a status conference to discuss the jurisdictional issues raised by plaintiff's motion, and directing the government, "[i]f the payment to plaintiff has not yet been approved . . . [to] identify the individual or individuals at the Judgment Fund Group (or elsewhere at the Department of the Treasury) who are responsible for this state of affairs." Order of Feb. 18, 2014. The next day, February 19, the full payment was made, obviating any need for the Court to act to compel payment. Def.'s Notice of Payment of J. At the status conference, held February 20, the remainder of the parties' contentions were thoroughly discussed, and the issues boiled down to two basic questions: (1) Whether the Court has authority to entertain plaintiff's motion for sanctions against the government; and (2) if the Court does have authority to entertain the motion, whether plaintiff has met the requisite standard to merit relief.

## II. JURISDICTION

Plaintiff identifies RCFC 11, FRCP 69 and 70, and the inherent powers of the court as possible sources of authority to impose the sanctions sought in this motion. Our court has not adopted counterparts to FRCP 69 and 70, and thus these rules cannot supply the necessary authority. Rule 11 requires a litigant to make reasonable inquiry into statements alleged in papers filed with the court and permits a court to sanction violations of this requirement. RCFC 11(b), (c). In his motion, plaintiff has not identified any "pleading, written motion, or other paper" presented by defendant to this court which involves a misrepresentation or was "presented for any improper purpose." RCFC 11(b).[2] The Court therefore can find

---

[2] At the status conference held on February 20, 2014, plaintiff vaguely alleged that certain misrepresentations were made by government counsel in the recitation of background facts contained in the opposition to this motion. Assuming *arguendo* that such allegations were true, they could not retroactively justify the filing of the same motion before the alleged misrepresentations in opposition to it were made. In any event, the Court does not find that government counsel's filings are misleading. Nor, for that matter, did plaintiff follow the procedures for invoking

no basis upon which to impose sanctions pursuant to Rule 11. The only remaining authority upon which the Court could potentially rely is the court's inherent powers, to which we turn next.

Plaintiff argues that "this Court's exercise of its inherent powers to enforce its judgments . . . via the imposition of sanctions and its contempt powers . . . are really the only means available to it to enforce its judgments." Pl.'s Mot. at 4. Defendant contends in its response paper that the precedent established by *Yancheng Baolong Biochemical Products Co. v. United States*, 406 F.3d 1377 (Fed. Cir. 2005), and *Tippett v. United States*, 98 Fed. Cl. 171 (2011), precludes the imposition of monetary sanctions against the United States. Resp. at 8–9 (citing *Yancheng Baolong*, 406 F.3d at 1382–83 and *Tippett*, 98 Fed. Cl. at 180–81).

The Court of Appeals for the Federal Circuit in *Yancheng Baolong* determined that the Court of International Trade (CIT) could not impose monetary sanctions against the United States without an explicit waiver of sovereign immunity. *Yancheng Baolong*, 406 F.3d at 1382. The plaintiff in that case had argued that either 28 U.S.C. § 1581(c) --- which created jurisdiction in the CIT to adjudicate certain actions against the United States under the tariff laws --- or Rule 86.2 of the Rules of the U.S. Court of International Trade provided such a waiver. *Id.* The Federal Circuit found, however, that the mere grant of jurisdiction in § 1581 was insufficient by itself to also waive sovereign immunity regarding monetary sanctions, and that the rules of the court --- promulgated by the court itself --- were powerless to create such a waiver. *Id.* at 1383. In *Tippett*, the Federal Circuit's decision in *Yancheng Baolong* was applied to find no waiver in the language of 28 U.S.C. § 2521, which grants our court the "power to punish by fine or imprisonment, at its discretion, such contempt of its authority as . . . disobedience or resistance to its lawful writ, process, order, rule, decree, or command." 28 U.S.C. § 2521(b)(3) (2012); *see Tippett*, 98 Fed. Cl. at 181 (citing *Yancheng Baolong*, 406 F.3d at 1382–83).

At the status conference the government drew the Court's attention to *American Rivers v. United States Army Corps of Engineers*, 274 F. Supp. 2d 62 (D.D.C. 2003). In dicta, the court in *American Rivers* cited *Coleman v. Espy*, 986 F.2d 1184 (8th Cir. 1993), and opined that the government "has not waived its sovereign immunity with regard to compensatory fines for contempt." *Am. Rivers*, 274 F. Supp. 2d at 69 (citing *Coleman*, 986 F.2d at 1191). The *Coleman* opinion in turn relied on the Supreme Court's decision in *United States v. King*, 395 U.S. 1 (1969), which held that our (and the Federal Circuit's) predecessor lacked the power to issue declaratory judgments under the Declaratory Judgment Act of 1934

---

Rule 11. *See* RCFC 11(c)(2) (stating that a Rule 11 motion "must not be filed or presented to the court" until it has been served on the defendant and the defendant has been allowed twenty-one days to withdraw or correct the challenged filing).

because Congress did not unequivocally express its intent to extend application of the act to that court. *Coleman*, 986 F.2d at 1191 (citing *King*, 395 U.S. at 4). During the conference, defendant also cited *United States v. Droganes*, 893 F. Supp. 2d 855, 884–85 (E.D. Ky. 2012), which found monetary sanctions unavailable against the government under the civil contempt power granted other federal courts by 18 U.S.C. § 401. Defendant maintains that the nearly identical language of 28 U.S.C. § 2521(b) should be likewise interpreted to find no waiver of sovereign immunity.

The Court cannot agree with the government on this point. Unlike the jurisdictional statute under consideration in *Yancheng Baolong*, 28 U.S.C. § 2521(b) expressly confers "power to punish by fine" actions in contempt of court authority. And section 2521(b) applies only to our court, a court in which the federal government is a party in every single case. Thus, in contrast to the circumstances surrounding 18 U.S.C. § 401 --- which applies generally in federal courts hearing cases which involve parties other than the federal government --- Congress passed section 2521 to apply in a court in which the federal government was always the defendant. Congress thus clearly and unequivocally subjected the federal government to fines for contempt based on "disobedience or resistance to [our court's] lawful writ, process, order, rule, decree, or command." 28 U.S.C. § 2521(b)(3). This waiver of sovereign immunity empowers our court to impose monetary sanctions against the federal government for contempt, and thus plaintiff's motion is within our jurisdiction.

### III.  A FINDING OF CONTEMPT IS NOT WARRANTED

The Court turns now to the facts of the present case. The government has given a plausible explanation for what appears, at first blush, to be an excessive delay in making payment on the judgment. Much of the delay stemmed from miscommunications regarding the requirements for obtaining payment from the Fund. Plaintiff failed to use the paperwork specified by the DOJ at the time of the first tentative settlement in November 2012. Plaintiff instead followed the instructions on the form sent by the Clerk of this court, which did not describe all the information desired by the Fund, including a TIN and instructions for EFT. Resp. at 4. Upon resolving that issue, the government --- including the DOJ --- suspended its operations due to the shutdown in October, 2013, and the processing of paperwork was further delayed. *Id.*

The only part of the delay that the Court finds particularly disturbing is the Fund's preliminary rejection of plaintiff's application for payment, which was apparently based on a desire for more information about the identity and status of Mr. Stevens. Resp. at 6. Government counsel contends that the fact that the named plaintiff was the representative of the estate of the original plaintiff triggered additional procedures at the Fund, procedures intended to ensure that

payment is rendered to the correct person. *Id.*[3] The Court finds it hard to see how the provision cited by government counsel, *see* 3 U.S. Gen. Accounting Office, Principles of Federal Appropriations Law, 14-71 (2d ed. 1994) (explaining the procedures to follow when "the payee dies before the judgment is paid"), applies when the named plaintiff is already the representative of the estate, as here, and is the payee designated by the DOJ in its settlement agreement.[4] In any event, the Court has no basis to equate such overabundant caution with the disobedience of a court order for purposes of civil contempt.

Plaintiff, in his papers and during the status conference, provided no evidence that payment of the judgment in this case was slower than usual.[5] Neither has plaintiff provided any precedent to support the imposition of a financial penalty on the government due to a bureaucratic delay of the sort involved in this case. The Court understands the frustration of plaintiff's counsel, who seems to have worked diligently to do everything needed to get payment issued in a timely fashion. But the Court also recognizes that government counsel commendably did all which could reasonably have been expected to facilitate the process. All told, no evidence has been identified from which one could infer that the delay in payment was due to a decision to disobey the judgment of our court, much less the clear and convincing evidence needed to establish such violation of a court order. *See, e.g.*, *Mission Critical Solutions v. United States*, 104 Fed. Cl. 18, 22 (2012). The motion for sanctions is **DENIED**.

---

[3] According to the government, a certifying official may be held strictly liable for rendering payment to the wrong person, warranting caution in situations where judgments are in favor of legal representatives whose authority may have lapsed or been invalid under state probate law, which controls in such matters. *See* 31 U.S.C. §§ 3322(a), 3528.

[4] Indeed, the Fund's refusal to accept DOJ's settlement with the estate representative on its face could serve as Exhibit A for a rethinking of the judicially-created doctrines presuming regularity and good faith conduct, which have irrationally mutated from their original purposes. *See Tecom, Inc. v. United States*, 66 Fed. Cl. 736, 757–72 (2005). The executive branch, after all, does not appear to extend these presumptions to itself.

[5] A screen grab provided by the government indicates that the Fund has been "experiencing extended processing times . . . [of] as much as 8–12 weeks from date of submission to date of payment." Resp., App. at 41. The processing delay at the Fund, combined with the effects of the miscommunications detailed above and of the government shutdown, account for the bulk of the eight month delay in this case.

## IV. CONCLUSION

For the reasons stated above, plaintiff's motion to compel payment is **DENIED** as moot, and plaintiff's motion for sanctions is **DENIED.**

**IT IS SO ORDERED.**

<u>s/ Victor J. Wolski</u>
**VICTOR J. WOLSKI**
Judge